

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-21-1999

# USA v. Warren

Precedential or Non-Precedential:

Docket 98-6488

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation
"USA v. Warren" (1999). *1999 Decisions*. Paper 211.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/211

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 21, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-6488

UNITED STATES OF AMERICA

v.

JOSEPH B. WARREN,
        Appellant

Appeal from the United States District Court
for the District of New Jersey
(Criminal No. 98-cr-00416)
District Judge: Honorable Alfred J. Lechner, Jr.

Argued May 19, 1999

Before: BECKER, Chief Judge, RENDELL, and ROSENN
Circuit Judges,

(Filed July 21, 1999)

        John H. Yauch, Esq. (ARGUED)
        Assistant Federal Public Defender
        Office of the Federal Public Defender
        972 Broad Street
        Newark, NJ 07102
         Attorney for Appellant

        Shawna H. Yen, Esq. (ARGUED)
        George S. Leone, Esq.
        Assistant United States Attorneys
        970 Broad Street
        Newark, NJ 07102-2515
         Attorneys for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge.

In this sentencing appeal, we are presented with the
dilemma of sentencing a courier who brought a large
quantity of drugs into the country but who, from the very
inception of the transaction, was cooperating with the
authorities, to whom he revealed his plans. The District
Court rejected Warren's plea for special probation and,
instead, departed upward to the maximum statutory
penalty. Warren challenges the adequacy of notice of the
District Court's upward departure and the sufficiency of the
evidence supporting the grounds given for the upward
departure, as well as the imposition of restrictions on his
travel outside of the United States as a special condition of
probation.1 We will reverse and remand for resentencing.

I.

Factual Background

Prior to his involvement in this matter, Joseph B. Warren
had been regularly employed with real estate, investment,
and computer and internet companies, primarily in Israel,
since his graduation from Cornell University in 1992. On
June 30, 1998, Warren telephoned the Drug Enforcement
Administration ("DEA") in Belgium, identifying himself as
"Jack." Warren stated that he was in Israel, and that he
had been propositioned by a drug trafficker, known only as
"Sammy," to act as a courier to transport ecstasy, an illegal
"designer drug," from Belgium to New York City and/or
cocaine from Panama to Europe. Warren claimed he had
never been involved in this type of activity before but
"became interested" after he was offered $15,000 for the

_____

1. Warren has raised two issues in a pro se  submission: 1) he should be
allowed to withdraw his plea; 2) his conduct is not a violation of
criminal
law. We have examined these arguments and determined that they are
without merit.

2

task. In the course of his initial conversations with the DEA, he expressed his desire to cooperate with law enforcement officials, and a special agent informed him that no plan could be devised until Warren was able to provide additional names or until details were confirmed. Warren said he would call again once he had more information.

On July 8, 1998, Warren arrived in Belgium and called the special agent, and the two men met. Warren reported to the DEA agent in the course of their meeting that he needed the money he was to receive as a drug courier "because he was several hundred thousand dollars in debt as the result of bank frauds and dealings with Israelis involved in vehicle thefts." Presentence Report ("PSR") P 9. Warren also reported that a flight reservation had been made for him on July 9, 1998. He had been told that the suitcase he was meant to deliver would be brought to his hotel in Brussels on the morning of July 9, 1998.

After debriefing Warren, the DEA agent called a federal customs agent in the United States to arrange for a controlled delivery. Customs agreed to assist, provided Warren was to arrive in Newark on July 13, and not July 9. Warren declined to follow this course of action, believing that it placed him in danger. The special agent then advised Warren to walk away from the situation, warning that a "lookout" would be placed on him at United States airports, and he would be stopped and searched if he tried to enter the United States. Warren stated that he would not continue his interactions with the drug traffickers and would return to the United States or Israel. On July 9, 1998, Warren arrived in Newark International Airport and approached immigration officials. He stated that he had drugs in his possession, and customs inspectors found a large quantity of pills in his luggage. The drugs were seized, and a lab report indicated that Warren turned over 21,269.2 tablets of ecstasy. Warren was arrested and charged with importation of a controlled substance, but he later pled guilty to simple possession of a controlled substance.2

_____

2. The rationale for prosecuting a courier who cooperates with the authorities from the outset escapes us, but it is not for the federal courts
to second-guess the U.S. Attorney's Office on its prosecutorial decisions. See Inmates of Attica Correctional Facility v. Rockefeller, 477 F.2d 375, 380-83 (2d Cir. 1973).

The PSR noted that where the base offense level under 2D2.1 applies, a potential ground for an upward departure may exist under Application Note 1, on the basis that the drugs were not intended for use by that defendant. The PSR also noted that the large amount of drugs Warren had carried placed his case outside of the "heartland" of the Guidelines, and that in such a case, an upward departure would be appropriate pursuant to section 5K2.0. Warren objected to the PSR in a written submission, but he did not object or argue that objection in the course of the sentencing hearing itself.

The PSR paints a picture of Warren as an intelligent young man, the product of a supportive environment with strong family and religious ties, who had not previously had any dealings with the criminal justice system. While regretting his conduct and accepting responsibility, Warren nonetheless indicated to the probation officer that he had not considered the possibility of spending any time in jail since he was "not a criminal" and was trying to help the police. At sentencing, Warren's attorney asked for special probation on the grounds that Warren had no prior criminal record, had the potential for a "bright future," had accepted responsibility for his actions, and had already spent two months in jail during the pendency of the case. The District Court viewed the situation differently, and departed upward, sentencing Warren to the statutory maximum punishment of 5 years probation. The District Court's stated basis for its ruling was twofold: first, that the drugs were not for personal consumption, and second, that Warren had a history of criminal conduct. The crucial portion of the sentencing transcript reads as follows:

> Despite warnings to you, clear, unequivocal warnings, you chose to board a plane to this country and carry 6,239 grams of Ecstasy with you, an extraordinary amount of drugs. Clearly not for personal consumption. As I've said, a one year term of probation and expungement of your record is insufficient given the circumstances of this case; the warnings that were given to you, the entire volitional conduct. The unusual circumstances were taken into consideration by the Government when affording you this plea. Again,

4

> although I recognize I have the right to do this, I reject it, utterly reject it.
>
> I'm going to place you on probation, but I'm going to do so pursuant to an upward departure that these drugs were not for personal consumption, and I make that finding in light of the amount, extraordinary amount of drugs you carried into this country. The fact that as you candidly indicate in the presentence report, paragraph nine . . . you needed money because you were several hundred thousand dollars in debt as a result of bank frauds and dealings with Israel, also involved in vehicle thefts. You have a history of criminal conduct by your own admission. You need supervision. Pursuant to the Sentencing Reform Act of 1984, and Section 5K2.0, it is my judgment that you are placed on probation for a period of five years. . . . You are to refrain from applying for a passport and restrict your travel to the United States. A. at 76-77.

Warren had a criminal history category of I, so the District Court's decision to depart upward added four offense levels to Warren's offense calculation, taking it from two to six, to impose the five years of probation. See S 5B1.2(a)(1). The government argues that the District Court was justified in its upward departure under section 2D2.1 based on the defendant's intent not to consume the drugs personally. Warren argues that the District Court improperly departed upward based on section 2D2.1, but also based upon uncharged criminal conduct. We conclude that both grounds were relied upon by the District Court in its departure decision.

We have jurisdiction pursuant to 28 U.S.C. S 1291 and 18 U.S.C. S 3742. A District Court's decision to depart under the Sentencing Guidelines is reviewed for abuse of discretion, and deferential review is accorded to the extent of the departure. See United States v. Baird, 109 F.3d 856, 862, 871 (3d Cir. 1997). If no objection was made, review is for plain error. See United States v. Paslay, 971 F.2d 667, 674 n.13 (11th Cir. 1992). The imposition of a special condition of probation or supervised release is reviewed for an abuse of discretion, but absent an objection, review is for plain error.  See United States v. Crandon, 173 F.3d 122,

5

127 (3d Cir. 1999), petition for cert. filed , (U.S. June 19, 1999) (No. 98-9838); United States v. Fabiano , 169 F.3d 1299, 1307 (10th Cir. 1999), petition for cert.filed, (U.S. June 3, 1999) (No. 98-9770); United States v. Voda, 994 F.2d 149, 153 (5th Cir. 1993).

## II. Discussion

### A. Upward Departure

Warren challenges the upward departure on a variety of grounds. First, he claims that the District Court did not articulate reasons for its departure. We disagree. The District Court did articulate reasons for its upward departure. He also contends that the evidence before the District Court did not provide a sufficient basis for either ground of the upward departure. As we discuss more fully below, we agree with Warren's contentions. He also argues that he did not have adequate notice of the grounds for the upward departure. We do not need to reach this argument, given our agreement with his view that the upward departure itself was not supported by the record.

### 1. Upward Departure Based on Quantity of Drugs under Section 2D2.1 or Section 5K2.0

In departing upward, the District Court relied in part upon Application Note 1 to Section 2D2.1, which states:

> The typical case addressed by this guideline involves possession of a controlled substance for the defendant's own consumption. Where the circumstances establish intended consumption by a person other than the defendant, an upward departure may be warranted.

Therefore, a court may consider an upward departure if a defendant is charged with possession of a controlled substance and the "circumstances establish intended consumption by a person other than the defendant." In other words, the departure would be appropriate if it is shown, or can be inferred, that the defendant intends to do something more than merely possess the drugs. Warren

6

argues that he was only trying to help the police and did not intend that the drugs would be distributed on the street. Therefore, he contends, Application Note 1 to Section 2D2.1 does not apply to him, because that Guideline provision is meant to apply to persons who intend to distribute or share the drugs they bring into the country. Although Warren did not object to the imposition of the upward departure at the sentencing hearing, we find that he adequately preserved his objections to the upward departure under section 2D2.1 via his response to the PSR. See United States v. Pardo, 25 F.3d 1187, 1193 (3d Cir. 1994). As a result, we will review this departure determination for abuse of discretion. See Baird , 109 F.3d at 862, 871.

The government argues that: 1) the Application Note to Section 2D2.1 is an encouraged factor under the Guidelines, and hence serves an acceptable basis for departure under a reading of the circumstances of the case; or 2) that the sheer quantity of drugs alone is a sufficient ground for an upward departure under Koon, as the quantity of drugs possessed takes Warren's case outside of the "heartland" of drug possession cases. 3 In so arguing, the government relies on prior statements by this court indicating that quantity alone can serve as an appropriate ground for an upward departure when a defendant has been charged with possession of a controlled substance. See United States v. Collado, 975 F.2d 985, 990 n.4* (3d Cir. 1992); United States v. Ryan, 866 F.2d 604, 608–10 (3d Cir. 1989). Other courts have also indicated that an upward departure based upon drug quantity alone is appropriate in drug possession cases. See United States v. Vasquez, 909

_____

3. If a particular factor is not mentioned in the guidelines, that does not
mean that departure on the basis of that factor is precluded. Rather, Koon "authorizes district courts to depart in cases that feature aggravating or mitigating circumstances of a kind or degree not adequately taken into consideration by the commission" in formulating guidelines to apply to a "heartland" of cases. Koon v. United States, 518 U.S. 81, 94 (1996). A sentencing court is free to consider, in an unusual case, whether or not the factors that make it unusual are present in sufficient kind or degree to warrant a departure. See, e.g., United States v. Nolan–Cooper, 155 F.3d 221, 224 (3d Cir. 1998).

F.2d 235, 242 (7th Cir. 1990) ("an upward departure from the guideline for simple possession of narcotics, which does not refer to drug quantity, may be based on drug quantity where the amount possessed is atypical"); United States v. Crawford, 883 F.2d 963, 964 (11th Cir. 1989); cf. United States v. Correa–Vargas, 860 F.2d 35, 38 (2d Cir. 1988). As such, the government argues that Warren's ultimate intention to turn the drugs over to law enforcement does not matter, for he also intended to do so on his own terms.

Although the above cases reflect several courts' willingness to look to the quantity of drugs involved when departing upward in drug possession cases, these cases have neither relied on nor interpreted Application Note 1 of Section 2D2.1. In turning to the case at hand, wefirst observe the notable absence of case law interpreting Application Note 1 of section 2D2.1 since the guidelines were amended to include it in 1997. We surmise that this lack of discussion is because the language and import of this particular note are clear, dictating that in the case of a simple possession offense, a district court should also look to the circumstances presented by the record before it to determine whether an upward departure is warranted. This record contains no evidence of "circumstances" that establish intended consumption by another within the meaning of Application Note 1. Rather, the record evidence of intent consists of proof that Warren had no intent to do anything with the drugs other than turn them over to law enforcement authorities. That he was not compliant with the government's preferred modus operandi in terms of when and where he was to turn the drugs over does not alter the fact that the record is devoid of any evidence that would be probative of intent by Warren to distribute or share the ecstasy carried in the suitcase. In the face of this lack of evidence, and in the face of actual proof of intent to turn in the drugs to the government, the quantity of drugs lacks significance for purposes of sentencing.

In so stating, we are not contravening the statements we have made in Collado and Ryan regarding drug quantity and the propriety of upward departures based on quantity of drugs under section 5K2.0. Large quantities of drugs can clearly take a routine possession case out of the heartland,

8

and thereby justify a departure under section 5K2.0. However, the rationale for distinguishing such an offense from the "heartland" of possession cases is not dependent on quantity per se, but, rather, on what quantity connotes. See Ryan, 866 F.2d at 605 (departure based upon quantity, packaging, and purity of drugs). Large quantities of drugs are relevant to sentencing determinations in possession cases only to the extent that they indicate the high probability that the drugs were intended not for mere possession, but for distribution to others. However, where the sole evidence of intent negates the normal inferences to be drawn from the sheer quantity of drugs possessed, the inferences that may normally be permissibly drawn from quantity are improper. In this case, the record evidence is unequivocal that not only did Warren not intend that anyone consume the drugs he carried, but also that he intended to turn those drugs over to government agents and did so. In such a situation, we conclude that the District Court abused its discretion in utilizing Application Note 1 of Section 2D2.1 or 5K2.0 as a basis for an upward departure based on quantity of drugs.

2. Evidentiary Basis of Criminal Conduct as a Basis for the Upward Departure

Warren also attacks the District Court's reliance on a paragraph in the PSR as the evidentiary basis for the other ground for upward departure, namely uncharged criminal conduct. As he did not object to the upward departure based on uncharged criminal conduct, he must demonstrate plain error. See United States v. Dozier, 119 F.3d 239, 244 (3d Cir. 1997). The government argues that a court may consider any information concerning the background, character, and conduct of the defendant in sentencing a defendant, and that the information regarding his other criminal activity was properly considered by the District Court. U.S.S.G. S 1B1.4; U.S.S.G. Ch. 1, Pt. A, 4(b). While we do permit reference to such information in sentencing a defendant, a district court should consider only reliable information about the defendant and his background and character. Although the Federal Rules of Evidence do not apply in sentencing proceedings,

9

information "used as a basis for sentencing under the Guidelines must have `sufficient indicia of reliability to support its probable accuracy.' " United States v. Miele, 989 F.2d 659, 664 (3d Cir. 1993). We have stated that this standard should be applied rigorously. See United States v. Brothers, 75 F.3d 845, 848 (3d Cir. 1996). In analyzing an upward departure, we must therefore assure ourselves that such a departure rests on a reliable evidentiary basis. See Gambino v. Morris, 134 F.3d 156, 162 (3d Cir. 1998), citing United States v. Cammisano, 917 F.2d 1057, 1061 (8th Cir. 1990); United States v. Cantu-Dominguez, 898 F.2d 968, 970-71 (5th Cir. 1990).

In sentencing Warren on the basis of uncharged criminal conduct, the District Court appears to have relied entirely on paragraph nine of the PSR, which stated: "During the meeting [with a DEA agent] Warren claimed he was to receive $15,000 for acting as a drug courier, and that he needed the money because he was several hundred thousand dollars in debt as the result of bank frauds and dealings with Israelis involved in vehicle thefts." By its own terms, the statement is equivocal; it is unclear therefrom whether Warren was the perpetrator or the victim of the frauds recited. The statement is not attributed or sworn and appears to be second-hand hearsay. A district court "can give a high level of credence to hearsay statements" and can even credit hearsay over sworn testimony "especially where there is other evidence to corroborate the inconsistent hearsay statement." See Brothers , 75 F.3d at 848. This statement, however, whatever its import, is too ambiguous and attenuated a basis for this particular ground for an upward departure. Neither this statement, nor the purported conduct, was the subject of any discussion or argument at the sentencing hearing itself; it was not detailed or corroborated in any manner. Further, the PSR paragraph does not contain sufficient detail or other indicia of reliability that would provide an adequate basis for the District Court to rely upon it in departing upward. This is not to say that a district court can never rely on facts set forth in a PSR as the basis for an upward departure, but a district court cannot, as here, merely extrapolate from such ambiguous statements contained in a paragraph in the PSR, without more, as a basis for an

10

upward departure. There should be some offer of proof or evidence to accompany that statement before it may form the basis for an upward departure.

Because the bases for the upward departure did not have sufficient evidentiary support, we will vacate the District Court's order and remand for resentencing. In so doing, we note another aspect of this case that is apparent from the District Court's sentencing colloquy and from the tenor of the government's argument on appeal. Both cast the defendant in a negative light, and unusually so, presumably based on his conduct or attitude in this case. While we do not condone Warren's actions, we do not view them as implicating his credibility in a way that would undermine the record regarding his intent. The District Court did not voice any criticism directed at his veracity, but attacked instead his decision to act on his own, contrary to the government's wishes. While Warren's position -- that he did not want to walk away from the drug dealers, or change his travel date for fear of his own safety -- seems plausible, perhaps Warren was playing fast and loose with the government, and we do not preclude the District Court from permitting further development of the record in its discretion, should the argument or questions on remand dictate. See United States v. Dickler , 64 F.3d 818, 831-32 (3d Cir. 1995); see also United States v. Walker, 149 F.3d 238, 243 (3d Cir. 1998).

B. Travel Restriction as a Special Condition of Probation

Warren also challenges the District Court's imposition of a bar to his travel outside of the United States as a special condition of his term of his probation. A court may impose a special condition of probation to the extent that any such condition is reasonably related to factors set forth in Section 3553(a)(1) and (2),4 and to the extent that such

_____

4. Section 3553(a)(1): the nature and circumstances of the offense, and the history and characteristics of the defendant;

Section 3553(a)(2): the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; B) to afford adequate deterrence to criminal conduct; C) to protect the public from further crimes of the defendant; and D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

conditions involve only such deprivations of liberty and property as are reasonably necessary to fulfill the purposes of probation. 18 U.S.C. S 3563(b). Standard conditions of probation include restrictions on a defendant's right to travel. See 18 U.S.C. S 3563(b)(13) & (14) (limiting where a defendant may reside, and requiring a defendant to remain within the jurisdiction of the court unless granted permission to leave by the court or a probation officer). Courts have also allowed for particularized travel restrictions as special conditions of probation. See, e.g., United States v. Friedberg, 78 F.3d 94, 97 (2d Cir. 1996); United States v. Pugliese, 960 F.2d 913, 915-16 (10th Cir. 1992). In determining what constitutes a sufficient record to uphold a probation condition, courts have looked to whether a court has made any explicit factual findings, or to whether the record before the court suggests reasons for the restriction that would serve the aims of probation. See United States v. Porotsky, 105 F.3d 69, 71-72 (2d Cir. 1997); Friedberg, 78 F.3d at 96-97; Voda , 994 F.2d at 153.5

As noted above, the courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions. In Friedberg, a case decided under the Federal Probation Act, the defendant Igor Porotsky, a Russian emigre, pled guilty to conspiracy and attempted tax evasion from a gasoline bootlegging scheme. The defendant had been granted permission to travel to Russia prior to his guilty plea, but his requests to travel to Russia during the term of his probation had been denied without explanation by the district court. See id. at 95-96. The district court then denied a travel request on the basis that the defendant posed an enhanced risk of flight. See id. at 96. On appeal, the court found that the district court had not considered whether the denial of the travel request

_____

5. Warren argues in passing that he did not receive adequate notice of the probation condition. Courts have been reluctant to include conditions of supervised release or probation within the disclosure requirements of Burns, apart from requiring notice in instances of community notification provisions for sex offenders, and we do not see a reason to extend the rationale of Burns to cover travel restrictions. See,
e.g., United States v. Coenen, 135 F.3d 938, 940-45 (5th Cir. 1998); United States v. Mills, 959 F.2d 516, 518-19 (5th Cir. 1992).

12

served the aims of probation, and remanded with instructions to make appropriate factual findings as to whether the denial of the travel request served those aims. See id. at 96–97; see also Porotsky, 105 F.3d at 72 (finding that mere recitation of twin aims of probation by the district court was not a sufficient finding for denial of a travel request, and remanding with directions for the district court to grant the request). Compare United States v. Beech–Nut Nutrition Corp., 925 F.2d 604, 607–08 (2d Cir. 1991) (denying defendant permission to travel to Europe to pursue job opportunities appropriately satisfied objectives of probation).

At the very least, the record below must contain evidence that would support the imposition of a special condition of probation, even if the district court fails to set forth its findings and justifications. In Voda, the defendant had been charged with one count of negligent discharge of a pollutant and he challenged the court's condition that he not possess a firearm during his probation term. The district court had given no reason on the record for imposing the condition, nor was there any reason suggested by the PSR or apparent in the record before the court. See 994 F.2d at 153. The court noted that although prohibition of firearm possession was a permissible discretionary condition of probation, this case did not present circumstances that would support the imposition of such a prohibition. See id. The court found that because the defendant was charged with a nonviolent offense, and the PSR did not indicate that he had violent or dangerous tendencies, or any past history of aggressive behavior, a firearm prohibition was not required to meet the purposes of probation. See id. at 153–54.

These cases indicate that in order to impose a special condition of probation, a district court should engage in an inquiry which results in findings on the record to justify that condition, and to indicate how that condition meets the statutory purposes of probation. We will affirm only if the district court has made such findings, or we can determine from the record a sufficient evidentiary basis for the special probation condition. In imposing the special condition of probation in this case, the District Court did not make findings in support of the travel restriction, nor

13

did it indicate how the restriction fit within the statutory aims of probation. Further, we cannot, on the record before us, ascertain any viable basis for the travel restriction in the record before the District Court in order for us to proceed to determine, on our own, whether the restriction satisfies the aims of probation. Even if we were to assume that the probation condition stemmed from Warren's alleged prior criminal conduct in Israel, we have found a mere reference to this supposed conduct to be an insufficient and unreliable basis on which to rest an upward departure. The travel restriction in this case suffers from a similar insufficiency, as it springs from reasons that are not supported in the record below.

While we share the District Court's impression that it would probably be in Warren's best interest that he not revisit his old "stomping grounds" in Israel, where his troubles began, in view of the inadequacy of the record, we cannot let the travel restriction stand. Should the District Court decide on resentencing that the travel restriction is appropriate to meet the aims of probation, it should set forth findings that support that conclusion.

For the foregoing reasons, we will vacate the sentence and remand for proceedings consistent with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

14