

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-6-2004

# USA v. Landry

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1187

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Landry" (2004). *2004 Decisions*. Paper 100.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/100

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-1187

———

UNITED STATES OF AMERICA

v.

JERRY LANDRY,

Appellant

———

ON APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.N.J. Criminal No. 03-cr-00332-1)
District Judge: The Honorable Freda L. Wolfson

———

Submitted Under Third Circuit L.A.R. 34.1(a)
November 3, 2004

Before: ALITO, BARRY, and FUENTES, Circuit Judges.

(Filed: December 6, 2004)

———

OPINION OF THE COURT

———

FUENTES, Circuit Judge.

Appellant Jerry Landry pled guilty to one count of

possession of child pornography and was sentenced accordingly in the District Court. Among the terms of the sentence is a three-year term of supervised release to be imposed upon the completion of his incarceration. On appeal, Landry challenges for the first time three of the conditions of supervised release: a blanket restriction on internet use, an order to complete a substance abuse program, and a prohibition on working with minors. We find that the District Court did not commit plain error in imposing these restrictions, and therefore affirm the sentence.

I.

As we write solely for the parties, our recitation of the facts will be limited to those necessary to our determination.[1] On July 24, 2002, Jerry Landry was pulled over in New Jersey by the police for driving an unregistered vehicle. After Landry was unable to produce a driver's license for the officers, they discovered through a radio check that his Virginia license was suspended and also that there existed an outstanding warrant for his arrest, which had been issued in Maryland. As a result,

---

[1] Most of the facts presented here are taken directly from Landry's pre-sentencing report.

2

Landry was arrested. The officers then searched his vehicle and found a fraudulent Maine driver's license and some fraudulent personal and commercial checks.

Shortly after arriving at the police station, Landry waived his <u>Miranda</u> rights and confessed to creating the fraudulent materials found in his car using his personal computer. Landry consented to a search of the motel room at which he was staying at the time. The police discovered the equipment used to make the licenses and checks, as well as blank check stock, more Maine driver's licenses, and thirteen photographs of minors engaged in explicit sexual conduct. One of these photographs depicted salacious conduct involving an adult male and a minor female. Landry admitted to the police that he knew the girl in that picture and that he in fact had taken the picture himself. A subsequent search of the equipment found in Landry's room revealed various materials for forgery of identification documents and checks and an extensive collection of child pornography, consisting of several hundred movies and images.[2]

---

[2] To this day, Landry contends that the pornography was already contained on hard-drives that he purchased used, and that he simply did not delete the material (rather than having sought it out or produced it himself). However suspect that claim may be, the State has not

3

In an interview with the U.S. Secret Service, Landry explained that he posted child pornography on a website that provided visitors with the materials in exchange for their identifying information. He would use the identifying information to produce fake driver's licenses.

Eventually, Landry was arrested by federal authorities on charges relating to child pornography. As part of a plea agreement, he pled guilty to one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). A pre-sentencing report was prepared and circulated by a U.S. probation officer, containing the following relevant information: (1) that Landry admitted to knowing the minor in one of the photographs found in his motel room and to actually having taken that picture; (2) that he admitted to prior recreational drug use as a teenager and to having been ordered to enter a substance abuse program; (3) that there is a pending charge against him for possession of paraphernalia associated with crack cocaine; and (4) that he once attempted suicide through the swallowing of

_____

produced any contradictory evidence and the District Court accepted Landry's contention. We need not concern ourselves with the credulity of the contention, as it does not affect our analysis.

4

prescription drugs. Landry was sentenced according to the guidelines to 48 months incarceration, three years of supervised release, and a special assessment of $100. Additionally, the judge imposed eight conditions applicable to the supervised release period, which were not objected to at the hearing. Among these conditions are: (1) that Landry "not possess, procure, purchase or otherwise obtain access to any form of computer network, bulletin board, Internet, or exchange format involving computers unless specifically approved by the Probation Office"; (2) that he "refrain from the illegal possession and/or use of drugs," submit to "testing to ensure compliance," and "submit to drug treatment, on an inpatient or outpatient basis"; and (3) that he "shall not obtain employment or perform volunteer work which includes, as part of its job/work description, contact with minor children." Landry filed timely notice of appeal of the sentence, and challenges these conditions in this Court as not supported by an articulated bases from the judge, overly broad, and not reasonably related to the goals of sentencing.

II.

5

Generally, the imposition of special conditions of supervised release is reviewed under the deferential abuse of discretion standard. See United States v. Lee, 315 F.3d 206, 210 (3d Cir. 2003). However, challenges to sentencing conditions not objected to at the sentencing hearing are reviewed under the even more deferential plain error standard. United States v. Warren, 186 F.3d 358, 362 (3d Cir. 1999). Thus, because no objection was made to the conditions challenged here, we apply the plain error standard. A plain error is one that (obviously) is plain and that affects substantial rights. See United States v. Wolfe, 245 F.3d 257, 261 (3d Cir. 2001). Deviation from a legal rule satisfies this standard. Id. However, even if a defendant can establish the existence of plain error, it is within the "sound discretion of the Court of Appeals . . . whether to correct the error." Id. (citing Fed. R. Crim. P. 52(b)). "[A] court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Olano, 507 U.S. 725, 732 (1993) (quotation omitted).

As we have noted before, "[a] sentencing judge is given

6

wide discretion in imposing supervised release." United States v. Crandon, 173 F.3d 122, 127 (3d Cir. 1999).

> [A] District Court may order any appropriate condition to the extent it (1) is reasonably related to certain factors, including (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) deterring further criminal conduct by the defendant, or (c) protecting the public from further criminal conduct by the defendant; and (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes of deterrence and protection of the public.

Id. (emphasis added) (citing 18 U.S.C. §§ 3583(d), 3553(a)). "[T]he courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions." Warren, 186 F.3d at 362, 366 (discussing conditions on "probation or supervised release"). However, "if the district court fails to set forth its findings and justifications," "the record below must contain evidence that would support the

7

imposition of a special condition." Id. at 366-67. "[A] district court should engage in an inquiry which results in findings on the record to justify that condition, and to indicate how that condition meets the statutory purposes of probation." Id. at 367. "We will affirm only if the district court has made such findings, or we can determine from the record a sufficient evidentiary basis for the [condition]." Id. A district court may adopt the factual findings in a pre-sentencing report in order to provide a sufficient record for review on appeal. See, e.g., United States v. Hallman, 23 F.3d 821, 827-28 (3d Cir. 1994).

III.

A. Bases for the Conditions

Landry first contends that the District Court failed to state bases for any of the three challenges conditions and that the record is devoid of any such basis for their imposition. Even if we were to agree with the former contention, we find that the pre-sentencing report, explicitly adopted by the District Court, provides ample support for the conditions. The internet restriction is supported by the fact that Landry used that medium to trade child pornography for identification information. Thus,

8

the internet facilitated his creation of forged documents and opened an avenue up for him to disseminate child pornography, potentially including materials that he himself created. Similarly, the work restriction finds support in his apparent attraction to minors and willingness to exploit them for his own benefit. Admittedly, the drug treatment order finds less robust support in the record, but his teenage substance abuse and more recent substance-based suicide attempt provide sufficient support, given the extraordinarily deferential standard of review that we must apply.

## B. Overbreadth of the Internet Restriction

Landry argues that the condition restricting his use of the internet and similar network-based communication systems is overly broad, as it prevents him from accessing email, news, weather, and other important information. He relies heavily on our decision in United States v. Freeman, 316 F.3d 386 (3d Cir. 2003), in which we found that a similar restriction "involve[d] a greater deprivation of liberty than is reasonably necessary to deter future criminal conduct and to protect the public." Id. at 392. We noted that, because Freeman had only downloaded

9

child pornography (not to downplay the wrongfulness of such action, of course), "[t]here is no need to cut off Freeman's access to email or benign internet usage when a more focused restriction, limited to pornography sites and images, can be enforced by unannounced inspections of material stored on Freeman's hard drive or removable disks." Id. We distinguished our decision in Crandon, in which a similar restriction was upheld, because "the defendant in Crandon used the internet to contact young children and solicit inappropriate sexual contact with them." Freeman, 316 F.3d at 392.

We first note that the restriction here is somewhat more narrow than that in Freeman, as Landry is not barred from using a stand-alone computer.[3] Moreover, Freeman can be characterized as a case involving a simple "consumer" of child pornography, with Crandon instead concerning someone directly involved in the exploitation of children. Under that dichotomy, it is not unreasonable to place Landry in the latter category, as he not only traded in the pornographic material, but in fact created

---

[3] It is also worth noting that the restriction here allows Landry access to the internet if he receives permission from the Probation Office. However, this fact does not distinguish this case from Freeman or Crandon, as similar allowances were made in those cases.

some of it.  Additionally, he used the internet to acquire information that he used in his production of forged documents. We are therefore satisfied that the imposition of the internet restriction here does not constitute plain error that must be corrected.

### C.  The Relationship to the Goals of Sentencing

Finally, Landry challenges the drug and work-related conditions as not reasonably related to the goals of sentencing. He cites our decision in United States v. Loy, 191 F.3d 360 (3d Cir. 1999), for the proposition that "the conditions of supervised release must be reasonably related to the goals of deterrence, protection of the public and rehabilitation of the defendant." Id. at 371.  Earlier in that opinion, we cited "the need for the sentence imposed to deter future criminal conduct, protect the public, and provide the defendant with necessary training, medical care, or other correctional treatment."  Id. at 370 (citing 18 U.S.C. § 3553(a)(1) & (2)).

Given the evidence we cited earlier as a basis for the drug restriction and the legitimacy of the goal of rehabilitation, we

cannot say that the District Court committed plain error in imposing the condition. We note again that the record may not support the conclusion that Landry has a serious drug problem, but it also does not compel the conclusion that he completely lacks "any substance abuse problem." See United States v. Modena, 302 F.3d 626, 636 (6th Cir. 2002) (rejecting a similar drug treatment condition as an abuse of discretion because "the PSR specifically states that the probation officer 'has no information pertaining to substance abuse/use pertaining to Mr. Modena'"). Similarly, our stated basis for the work restriction provides a reasonable relationship between the restriction and the goal of protecting the public, as Landry's previous exploitation of at least one minor suggests that he might revert to similar depravity if regularly exposed to other minors.

IV.

For the reasons set forth above, we find that the District Court did not commit plain error meriting intervention by this Court in imposing the supervised release conditions challenged by Landry. Accordingly, the sentence dispensed by the District Court is affirmed.