**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2573
_____

UNITED STATES OF AMERICA

v.

RASHEED DAVID,
Appellant
_____

On Appeal from the District Court of the Virgin Islands
(D.C. Crim. No. 1-11-cr-00009-002)
District Judge: Honorable Wilma A. Lewis
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 14, 2014
_____


Before: RENDELL, FUENTES, and GREENAWAY, JR., *Circuit Judges*

(Opinion Filed:  July 10, 2014)


_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*:

In November 2011, Rasheed David was convicted by a jury of conspiracy with intent to distribute 500 or more grams of cocaine and possession with intent to distribute 500 or more grams of cocaine. David was sentenced to 78 months' imprisonment and four years of supervised release. David appeals his Judgment of Conviction and Sentence, arguing that the evidence was insufficient to sustain his convictions, and challenging the amount of cocaine that was attributed to him for sentencing purposes. For the reasons set forth below, we will affirm.

## I. Background

In May 2011, David and his co-defendant, Damion Barrett, were indicted for conspiracy with intent to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. §§ 841 and 846, and possession with intent to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. The District Court denied David's and Barrett's motions to suppress after conducting a hearing, and granted defendants' requests to sever their trials.

The relevant facts adduced at David's trial, as summarized by the District Court, are as follows. *See United States v. David*, No. 2011-09, 2012 WL 2019156, at *3-5 (D.V.I. June 4, 2012). At 11:00 am on March 29, 2011, David and Barrett entered the "preclearance" area of the Henry Rohlsen Airport in St. Croix, U.S. Virgin Islands. While David passed through preclearance without incident, Barrett was stopped by Customs Inspector Vernon McSween. McSween determined that Barrett was traveling from St.

2

Croix to San Juan, Puerto Rico, and then on to Orlando, Florida. When McSween questioned Barrett about his destination, residence, and the purpose of his trip, Barrett went from "cool" and "calm" to nervous. *Id*. at *3. When McSween asked where Barrett had stayed on St. Croix, Barrett said he did not know. He also told McSween that he went to St. Croix for two days that he had off from work. As he spoke, he avoided eye contact, and began to stutter. Because of his behavior, McSween referred Barrett to secondary inspection.

At secondary inspection, Barrett told McSween that he had stayed at David's grandmother's house during his trip to St. Croix, and explained that David was his co-worker at Jet Blue Airlines. Barrett said, however, he was not traveling with David that day. During their conversation, Barrett's cell phone rang a number of times, but McSween told Barrett not to answer it. No contraband was found in Barrett's luggage, but while Barrett was emptying his pockets, McSween noticed that Barrett had a "bulge in his crotch area." *Id.* at *4. McSween told his supervisor, Aaron Eugene, who approved a request for a "pat down" of Barrett. *Id*. The search revealed four oval-shaped objects in Saran Wrap in Barrett's buttocks and groin area. One of the object's contents tested positive for cocaine. The contents were later tested by a chemist, who testified that the objects contained 1,010 grams of 79% pure cocaine.

Eugene then discovered that David was traveling along the same itinerary as Barrett, and security personnel retrieved David from the passenger lounge area and brought him to secondary inspection. No contraband was found on his person, but during a drug-dog sweep of the men's bathroom in the waiting area, another officer discovered

3

"a white brick shaped object with clear saran wrap over it" in one trash can and "two oval shaped objects with the same white powdery substance in the clear saran wrap" in an adjacent bin. *Id*. The chemist later tested the substance and testified that it was 1,489 grams of 80.3% pure cocaine.

David was arrested and interviewed. Following the administration of *Miranda* warnings, he told a special agent that he had known Barrett for about two years, they worked together at Jet Blue, they traveled together to St. Croix on this occasion and previously, and they had stayed at David's grandmother's home in St. Croix. David was then strip-searched, which revealed that he was wearing three pairs of tight fitting spandex-type underwear under his regular boxer shorts and baggy pants.

A Sprint employee testified as to the calls between David's and Barrett's cell phones during the period of Barrett's questioning. The government also introduced a surveillance video. It showed David entering the passenger waiting area at 11:04 am, 4 minutes after Barrett was referred to secondary inspection. At 11:05 am, David was no longer visible on the camera, and between 11:07 and 11:15 am, David called Barrett three times. At 11:16 am, David reappeared on the video, and was seen walking from the direction where the men's bathroom was toward another seat in the waiting area.

The jury returned a guilty verdict on both the conspiracy and possession counts. David then moved for a Judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure. In a detailed memorandum opinion, the District Court denied the motion.

At his sentencing the District Court determined that David was responsible for the entire weight of cocaine found, 2.49 kilograms (corresponding to a base offense level of 28). The Court rejected David's argument that he was responsible for no more than 1.49 kilograms (a base offense level of 26). The Court sentenced David to concurrent terms of 78 months, at the bottom of a 78-97 months Guidelines' range, and four years of supervised release. This appeal followed. [1]

## II. Conviction

Both crimes that David was convicted of require knowledge of the wrongdoing or illegal objective. First, "[t]o establish a charge of conspiracy, the Government must show (1) a shared unity of purpose, (2) an intent to achieve a common illegal goal, and (3) an agreement to work toward that goal, which [David] knowingly joined." *United States v. Boria*, 592 F.3d 476, 481 (3d Cir. 2010). Incorporated in these elements is a requirement that David had "knowledge of the specific illegal objective contemplated by the particular conspiracy, i.e. [distributing cocaine]." *Id.* Similarly, to prove possession in violation of 21 U.S.C. § 841(a)(1), the government must show either that David was aware of the fact that he was in possession of cocaine and intended to distribute it, *United States v. Barbosa*, 271 F.3d 438, 457 (3d Cir. 2001), or, under an aiding and abetting theory, that he knew of Barrett's possession of cocaine and acted with intent to facilitate its distribution, *Boria*, 592 F.3d at 481.

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

David argues that the government's evidence was insufficient to prove the knowledge requirement for either of the charges he was convicted of.[2] In dismissing David's Rule 29 motion seeking "Judgment of Acquittal or in the Alternative New Trial," the District Court wrote a detailed and persuasive account of the facts supporting David's knowledge sufficient for the government to meet its burden for both counts of conviction. *See David*, 2012 WL 2019156, at *2-8. For substantially the same reasons stated by the District Court, we will affirm David's convictions.

### III. Sentence

David also challenges his sentence. He argues that the District Court erred in attributing 2.49 kilograms to him, the entire amount of cocaine found at the terminal. This amount resulted in a base offense level of 28 and a Guidelines' range of 78-89 months. David is not clear on appeal what offense level he thinks is appropriate. He seems, rather, to suggest that no amount should be attributed to him. However, the jury convicted David of possession of at least 500 grams of cocaine, meaning he could not move lower than a base offense level of 26 (between 500 grams and 2 kilograms), and a corresponding Guidelines' range of 63-78 months.

In determining the base offense level for calculating the Guidelines in the case of a conspiracy, district courts are instructed to take into account "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity."

---

[2] At this juncture, "we review the evidence in the light most favorable to the government and sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mike*, 655 F.3d 167, 174 (3d Cir. 2011) (internal quotation marks omitted).

U.S.S.G. § 1B1.3(a)(1)(B). Furthermore, "the commentary to Guidelines § 1B1.3 explains, a person convicted of conspiracy to distribute controlled substances '*is accountable for all quantities of contraband* with which he was directly involved and . . . all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.'" *United States v. Iglesias*, 535 F.3d 150, 160 (3d Cir. 2008) (quoting U.S.S.G. § 1B1.3 cmt. n. 2 (emphasis added)).[3]

In reaching its determination that the government had established, by a preponderance of the evidence, that David possessed 2.49 kilograms of cocaine, the District Court relied on the testimony presented at trial and at the suppression hearing, as well as records from the suppression hearing. App. at 656. Specifically, the Court relied on in-person testimony and a report provided by Immigration and Customs Enforcement Special Agent Adeen, who testified at the suppression hearing that he interviewed Barrett on the day of Barrett's arrest, and that Barrett had implicated David. *United States v. Barrett*, No. 11-cr-09, 2011 WL 4443432, at *3 (D.V.I. Sept. 22, 2011). At sentencing, the Court credited Barrett's hearsay statements, concluding that David had proposed the trip, and had given Barrett 1.5 kilograms of cocaine while they were at David's family residence in St. Croix, in exchange for a promise that David would pay Barrett $3,000. App. at 656-57. While not explicitly referenced by the District Court, additional evidence proffered at the suppression hearing, and not presented at trial, included that the drug-dog

---

[3] We review the District Court's application of the Guidelines to the facts for abuse of discretion, and the District Court's factual findings will be reversed only if they are clearly erroneous. *See United States v. Kluger*, 722 F.3d 549, 555 (3d Cir. 2013).

alerted positive to the presence of cocaine on David's clothing. *Barrett*, 2011 WL 4443432, at *2.

David objects to the Court's reliance on Agent Adeen's testimony and report, which were used to connect David to the cocaine found on Barrett. David argues the District Court should not have relied on Barrett's statements both because they were hearsay and because they were otherwise unreliable. David argues that Barrett's statements were untrustworthy because they were contradicted by Barrett's own testimony at the suppression hearing, where he denied making such statements to Agent Adeen. Barrett testified instead that he got the cocaine from a man at "Sunny Isles," and not David.

While the Federal Rules of Evidence do not apply in sentencing proceedings, hearsay evidence relied on by the District Court must bear "sufficient indicia of reliability to support its probable accuracy." *United States v. Warren*, 186 F.3d 358, 365 (3d Cir. 1999) (internal quotation marks omitted); *see* 18 U.S.C. § 3661; U.S.S.G. § 6A1.3(a). The government argues that Barrett's statements have sufficient indicia of reliability for the District Court to have credited them. The indicia are that: (1) Barrett provided detailed information about the conspiracy; (2) it was more likely that David would have had access to local suppliers of cocaine as he had family in St. Croix; and (3) the drugs were similarly wrapped, indicating a common source and that Barrett would have had knowledge of the source. We would add that the report provided by Agent Adeen was supported by his in-person testimony. Resolving conflicting testimony is exactly the kind of determination we leave to the District Court. Because the factors suggested by the

8

government provide sufficient indicia of reliability, we conclude that the District Court did not err in relying on Barrett's hearsay statements in its fact-finding. Furthermore, these statements provide sufficient evidence for the District Court to have concluded that the cocaine found on Barrett was in the scope of David and Barrett's joint criminal activity.

We have considered the other arguments made by David and conclude they are without merit.

In sum, the District Court committed no abuse of discretion in determining that it was reasonably foreseeable to David that the 2.49 kilograms of cocaine found were within the scope of the criminal activity David undertook under U.S.S.G. § 1B1.3(a)(1)(B).

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's Judgment of Conviction and Sentence entered on February 4, 2013.