NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 17-2157

—————————

UNITED STATES OF AMERICA

v.

MELVIN R. PETERSEN,
                                    Appellant

—————————

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 3-16-cr-00047-001)
District Judge: Hon. Curtis V. Gomez

—————————

Submitted Pursuant Third Circuit L.A.R. 34.1(a)
December 15, 2017

Before: SMITH, *Chief Judge*, MCKEE, and SCIRICA, *Circuit Judges*

(Opinion Filed:  June 29, 2018)

—————————

OPINION[*]

—————————

**SCIRICA**, *Circuit Judge*

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Melvin Petersen pleaded guilty to possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). The District Court sentenced him to 31 months' imprisonment and imposed a requirement of 400 hours of community service as a condition of supervised release. Petersen appeals the denial of his motion to suppress an allegedly defective search warrant and also the imposition of a community service requirement. We will affirm.

## I.[1]

On November 18, 2016, Petersen was charged in a one-count indictment with possession with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and (b)(1)(C). In July 2016, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) received a tip from a confidential informant that an individual, later determined to be Petersen, was selling cocaine in the Red Hook Area of St. Thomas, Virgin Islands. Between August and September of 2016, ATF conducted three controlled cocaine purchases from Peterson, who arrived each time in a white Mitsubishi SUV. After the second purchase, ATF agents followed Petersen to a first-floor apartment in #33E Estate Nadir, later found to be his home. Before the third purchase, they observed Petersen leave that unit in the white SUV after the confidential informant called him and arranged for another purchase.

On September 27, a Magistrate Judge issued search warrants for that unit of #33E Estate Nadir and Petersen's SUV, which ATF executed the same day. A team of four agents, which included ATF Agent Cameron Miller, detained Petersen as he was getting

---

[1] We write for the parties and set forth only those facts necessary to our disposition.

into his SUV. Agent Miller helped secure the residence. Another team of agents stationed at the nearby Bovoni racetrack came to assist. While agents were searching the home, in which they found cocaine, marijuana, and $6,726 in US currency, two agents, including Agent Miller, interviewed Petersen in their vehicle after advising him of his *Miranda* rights. Petersen admitted to being a drug trafficker and told them they would likely find drugs in his home. Agent Miller also obtained search warrants to search Petersen's two cell phones.

Petersen filed a motion to suppress statements he made during the interview and all evidence obtained from his home, his car, and his cell phones. At the suppression hearing, Agent Miller erroneously stated the residence searched was in Estate Bovoni. He also testified he did not draft or sign the affidavits attached to the search warrants for Petersen's vehicle or home. But Agent Miller identified the search warrant for Petersen's home, which was marked as Exhibit 3. When the government moved to introduce the warrant, Petersen objected for lack of foundation.

Concerned about Agent Miller's statements that the house searched was in Estate Bovoni, the court called Agent Miller back to the stand, who apologized for his prior "confusion geographically." App. 169. He reviewed photographs attached to the affidavit and identified Petersen's apartment building, which he called "the residence." App. 168. When asked to clarify this term, he responded, "The residence that we searched, the residence in question, Mr. Petersen's residence." *Id.*

Finding that Agent Miller demonstrated sufficient familiarity with the search—in particular, Agent Miller's affirmation that the photograph attached to the affidavit

3

depicted the residence identified in the search warrant, and that residence was the place searched—the court denied the motion to suppress.

Immediately following the court's ruling, Petersen entered an unconditional, "straight up" guilty plea, after the court explained to him that by pleading guilty he was waiving certain rights. The court found Petersen entered a knowing and voluntary plea.

As noted, the court sentenced Petersen to 31 months' imprisonment, three years' supervised release, and a $100 fine. As a condition of supervised release, Petersen was required to complete 400 hours of community service. The court expressed particular concern that after finishing a term of supervised release following a prior 151-month prison term on a separate conviction, Petersen was again dealing drugs, and expressed its hope that community service would deter Petersen from further criminal conduct after his release from prison.

## II.[2]

Petersen offers two separate arguments challenging the District Court's ruling on the motion to suppress. First, he contends the District Court erred in admitting the search warrant and evidence seized because Agent Miller lacked personal knowledge about the search. Second, Petersen asserts the government did not prove the searched house was the house identified in the warrant. "'We review the District Court's denial of a motion to suppress for clear error as to the underlying factual determinations but exercise plenary

---

[2] The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

4

review over the District Court's application of law to those facts.'" *United States v. Werdene*, 883 F.3d 204, 209 (3d Cir. 2018) (quoting *United States v. Murray*, 821 F.3d 386, 390-91 (3d Cir. 2016)).

Generally, a witness may testify only to matters about which he has personal knowledge. *See* Fed. R. Evid. 602.[3] Assuming Rule 602 applies strictly at a suppression hearing, the District Court properly admitted the search warrant following Agent Miller's testimony. Petersen focuses his argument on the fact that Agent Miller incorrectly claimed the house searched was in Estate Bovoni, rather than Estate Nadir. But after being called back to the stand, Agent Miller made it clear that he had personal knowledge about the search and provided adequate foundation for the search warrant.

He correctly identified Exhibit 3 as the search warrant for the home. Additionally, he reviewed photographs attached to the affidavit and identified Petersen's apartment building, which he called "the residence." App. 168. When asked to clarify this term, he responded, "The residence that we searched, the residence in question, Mr. Petersen's residence." *Id.* Not only did Agent Miller recognize the building searched, but he also identified the door that led to Petersen's apartment. Agent Miller read from this photograph the address "Number 33 East Estate Nadir, Number 4," and said he "believe[d] Number 3, where the search warrant was executed in Mr. Petersen's

---

[3] Under the Federal Rules of Evidence, the court decides "any preliminary question about whether a witness is qualified . . . or evidence is admissible." Fed. R. Evid. 104(a). In making that determination, "the court is not bound by evidence rules, except those on privilege." *Id.*; *see also* Fed R. Evid. 1101(d)(1) (stating the Rules do not apply to "the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility").

5

residence, is in the lower right-hand corner, that door." App. 169. That door was where he and the team "went in and out of when we were executing the warrant. That's where we took drugs out of." App. 173–74. Agent Miller admitted that he did not see Petersen exit the door because his view was obstructed. But he noted Petersen must have exited through that door because he would have seen him exit the other door, of which Agent Miller had an unobstructed view. The District Court correctly concluded that Agent Miller's testimony supplied proper foundation for the search warrant.[4]

**III.**

Petersen argues the District Court made procedural and substantive errors in requiring him to complete 400 hours of community service as a condition of supervised release. Ordinarily, we review an imposition of a condition of supervised release for abuse of discretion. *United States v. Warren*, 186 F.3d 358, 362 (3d Cir. 1999). But Petersen's procedural argument was not preserved. "[A] defendant must raise any procedural objection to his sentence at the time the procedural error is made." *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014). If not, we review for plain error. *United States v. Azcona-Polanco*, 865 F.3d 148, 151 (3d Cir. 2017). "The plain error test requires (1) an error; (2) that is 'clear or obvious' and (3) 'affected the defendant's substantial rights, which in the ordinary case means he or she must show a reasonable probability that, but for the error, the outcome of the proceeding would have

---

[4] Petersen also contends the District Court made an improper factual determination that the searched house was #33 Estate Nadir, Number 3. But, Agent Miller's testimony was sufficient to prove the place searched was the address identified in the warrant. We see no error here.

6

been different.'" *Id.* (internal quotation marks omitted) (quoting *Molina-Martinez v. United States*, __ U.S. __, 136 S. Ct. 1338, 1343 (2016)). Preservation issue aside, Petersen's arguments lack merit.[5]

When a District Court imposes a condition of supervised release, the condition must be supported by evidence in the record showing it "is tangibly related to the circumstances of the offense, the history of the defendant, the need for general deterrence, or similar concerns." *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir. 2007). "[C]ourts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions," *Warren*, 186 F.3d at 366, and this requirement has also been applied to imposing conditions of supervised release, *see Voelker*, 489 F.3d at 144 n.2.

The District Court did not commit procedural error in imposing the community service requirement. It adequately explained its reasons, which it tied to Petersen's history. The court expressed concern that Petersen was "back in the game" of drug

---

[5] The sentencing process has three phases. *See Azcona-Polanco*, 865 F.3d at 151. "First, [the court] calculates the applicable Guideline range." *Id.* "Second, the court rules on any motions for departure." *Id.* Finally, "after considering the parties' arguments and the Section 3553(a) factors, it determines the appropriate sentence, which may vary from the Guideline range." *Id.*

We review a District Court's sentence in two steps. *Id.* at 152. At the first step, we evaluate whether a District Court committed a procedural error "'such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence.'" *Id.* (quoting *Tomko*, 562 F.3d at 567)). If the sentence is procedurally sound, "we review it for substantive reasonableness." *Id.*

trafficking right after finishing a term of supervised release following a separate 151-month prison term. App. 195. Additionally, the court hoped to deter Petersen from further criminal conduct: "There are certainly plenty more options that are available. And part of the reason for your supervised release is to make sure that your release is one that leads to a transition that won't result in you being here." App. 200. The court concluded the sentencing hearing by noting that if Petersen is "not engaged in the process, the likelihood of [him] coming back here is higher." *Id*.

Petersen argues the District Court failed to explain how the 400-hour requirement was reasonably related to the sentencing goals of 18 U.S.C. § 3553(a)(2). But the District Court explained the conditions it imposed were motivated by a desire to deter Petersen from further criminality. In requiring him to do community service after release, among other conditions, the court reasonably determined the defendant would be less likely to be "back in the game," again. There was no procedural error.

The sentence was also substantively reasonable. A sentence is substantively unreasonable if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Tomko*, 562 F.3d at 568. This inquiry focuses on whether the sentence "was premised upon appropriate and judicious consideration of the relevant factors." *United States v. Young*, 634 F.3d 233, 237 (3d Cir. 2011) (quoting *United States v. Doe*, 617 F.3d 766, 769–70) (3d Cir. 2010)). The party challenging the sentence bears the burden of proving its unreasonableness. *United States v. Friedman*, 658 F.3d 342, 360 (3d Cir. 2011).

Petersen has not met this burden. The District Court conducted an analysis of the § 3553(a)(2) factors and concluded that a 400-hour community service requirement, among other conditions of supervised release, would help deter the defendant from re-entering the drug trade after release. We cannot say that no reasonable court would have imposed this sentence.

**IV.**

For the foregoing reasons, we will affirm the judgment of conviction and sentence.