

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-29-2001

# United States v. Wolfe

Precedential or Non-Precedential:

Docket 00-1942

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"United States v. Wolfe" (2001). *2001 Decisions.* Paper 64.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/64

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed March 29, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1942

UNITED STATES OF AMERICA

v.

RICHARD ALLEN WOLFE,

      Appellant.

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal No. 99-cr-00256-1)
District Judge: Hon. William J. Nealon

Argued December 7, 2000

BEFORE: BARRY and COWEN, Circuit Judges and
WARD,* District Judge

(Filed: March 29, 2001)

      Daniel I. Siegel, Esq.
      Office of Federal Public Defender
      100 Chestnut Street, Suite 306
      Harrisburg, PA 17101

      Patrick A. Casey, Esq. (Argued)
      Office of Federal Public Defender
      116 North Washington Avenue
      Kane Professional Building, Suite 2C
      Scranton, PA 18503

      Counsel for Appellant

_____

* Honorable Robert J. Ward, United States District Judge, U.S. District
Court for the Southern District of New Y ork, sitting by designation.

Barbara K. Whitaker, Esq. (Argued)
Office of United States Attorney
235 North Washington Avenue
William J. Nealon Federal Building
Scranton, PA 18501

   Counsel for Appellee

OPINION OF THE COURT

COWEN, Circuit Judge.

I.

On April 9, 1999, Richard Allen Wolfe r obbed the Penn Security Bank and Trust Company. He walked into the bank, approached the teller with his hand in his jacket, handed her a bag and instructed her to fill it with money. He then told her he had a gun and would shoot. When the teller did not produce enough hundred dollar bills to satisfy him, he repeated the threat. He repeated the threat a third time to induce her to produce yet more money. Based on his words and actions the teller believed he had a gun and that he would shoot. She complied with his demands and he fled the bank with $4518.00. The bank teller did not see a weapon, nor is there any additional evidence, aside from his threats and actions, that he possessed a weapon at the time of the robbery.

Wolfe was charged with one count of ar med bank robbery in violation of 18 U.S.C. S 2113(d), to which he entered a plea of not guilty. To sustain a conviction for armed robbery one of the elements the prosecutor must pr ove is that the defendant "assaulted any person, or put in jeopar dy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. S 2113(d) (emphasis added). The evidence presented at trial focused almost exclusively on whether the witnesses had correctly identified Wolfe as the bank robber.1
_____

1. One of the officers responding to r obbery, Detective Culkin, viewed the
bank surveillance video. Based on his observations of Wolfe at a local bar

Other than the teller's testimony regar ding his repeated
threats, no evidence or arguments wer e presented on the
issue of whether Wolfe possessed a danger ous weapon at
the time he committed the robbery. With respect to this
element of the offense, the District Court charged the jury,
without objection, as follows:

> The fourth essential element that the government must
> prove beyond a reasonable doubt is that in committing
> the crime, the defendant deliberately and intentionally
> assaulted [the teller] or put her life in jeopardy by the
> use of a dangerous weapon. . . .
>
> ***
>
> The government must prove beyond a r easonable
> doubt that the defendant, during the commission of a
> bank robbery, committed acts or said wor ds that would
> have caused an ordinary person to reasonably expect
> to die or face serious injury by the defendant's use of
> a dangerous weapon.

This charge permitted the jury to convict if they concluded
that Wolfe's words or actions could have reasonably led the
teller to believe that he might use a danger ous weapon,
regardless of whether the jury believed he actually had a
weapon. The jury reached a guilty verdict that same day.
_____

on prior occasions, as well as his observations that on the night before
the robbery he saw Wolfe wearing clothes similar to those worn by the
robber, he opined that Wolfe was the robber. The FBI ran a record check
on Wolfe revealing that he had outstanding parole violation warrants and
that his parole officer, Thiel, was actively investigating to determine
his
whereabouts. Officer Theil was shown the surveillance video. Based on
his observations of Wolfe during the four tofive years that he was under
supervision, as well as his recollections that during a recent interview
Wolfe had been wearing clothes similar to those worn by the robber, he
also concluded Wolfe was the robber . When the authorities learned of
Wolfe's whereabouts and went to arr est him, he was found hiding in the
ceiling. He was arrested pursuant to the par ole warrant violations. A
lawful search of Wolfe's personal pr operty revealed a bank bag
containing over $1000 in cash. Shortly after W olfe's arrest, two bank
tellers were presented with a photographic array and each of them
independently identified Wolfe as the bank robber.

The District Court imposed a sentence of 21 years and 10 months.

II.

The defendant now stipulates that there was sufficient evidence at trial to prove that he committed the lesser offense of bank robbery by intimidation, in violation of 18 U.S.C. S 2113(a). However, he appeals his conviction for the greater offense of armed bank r obbery on the ground that there was insufficient evidence to pr ove the "use of a dangerous weapon" as required for a conviction under S 2113(d). Wolfe argues ther e was insufficient evidence for a jury to conclude beyond a reasonable doubt that he actually possessed a dangerous weapon during the commission of the robbery. This appeal cannot, however, be analyzed as a simple sufficiency of the evidence claim because the jury charge allowed a conviction if the jury concluded that the teller reasonably believed W olfe had a weapon and that he might use it. That is, the char ge allowed the jury to convict regardless of whether they concluded he actually possessed a weapon when he r obbed the bank. Therefore, we must review both the sufficiency of the evidence to convict Wolfe under S 2113(d) and the propriety of the jury instructions that allowed conviction based solely on the teller's reasonable belief that Wolfe had a weapon.

Because Wolfe did not raise an objection at trial to either the sufficiency of the evidence or the jury char ge we will reverse only if we find "plain err or." Fed.R.Crim. P. Rule 52(b); United States v. Turcks, 41 F .3d 893, 897 (3d Cir. 1994); United States v. Gaydos, 108 F .3d 505, 509 (3d Cir. 1997) (where the defendant does not preserve insufficiency issue by filing a timely motion for a judgment of acquittal, sufficiency of the evidence is reviewed under a plain error standard). This standard is met when ther e is an "error" that is "plain" and that "affects substantial rights." United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993); Turcks, 41 F .3d at 897. A court's deviation from a legal rule constitutes "err or". Olano, 507 U.S. at 732, 113 S.Ct. at 1777, 123 L.Ed.2d 508; Turcks, 41 F.3d at 897. A "plain" error is one that is "clear" or

4

"obvious." Id. An error is deemed to have "affected substantial rights" if it was prejudicial in that it affected the outcome of the District Court proceedings. Olano, 507 U.S. at 733, 113 S.Ct. at 1778, 123 L.Ed.2d 508; Tur cks, 41 F.3d at 897. Under plain error r eview, the defendant bears the burden of establishing that the err or prejudiced the jury's verdict. Turcks, 41 F .3d at 898. Even if the defendant establishes the existence of plain error , Rule 52(b) leaves to the sound discretion of the Court of Appeals the decision whether to correct the error. While the Court of Appeals has the authority to order correction when these elements are met, it is not required to do so. Id.  Instead, "we [ ] exercise our discretion `where the defendant is actually innocent, or where, regardless of the defendant's innocence or guilt, the error `seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " Turcks, 41 F.3d at 897. See also Olano, 507 U.S. at 732, 113 S.Ct. at 1777, 123 L.Ed.2d 508.

A defendant must move for a judgment of acquittal at the conclusion of the evidence to properly pr eserve for appeal issues regarding the sufficiency of the evidence. United States v. Wright–Barker, 784 F.2d 161, 170–71 (3d Cir. 1986). Wolfe failed to so move. Nonetheless, we will review the sufficiency of the evidence under the plain error standard because, as we have previously held, the prosecution's failure to prove an essential element of the offense constitutes plain error under Rule 52(b) of the Federal Rules of Criminal Procedure. Gaydos, 108 F.3d at 509. We review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a r easonable doubt based on the available evidence. Jackson v. V irginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

A conviction for armed bank robbery under 18 U.S.C. S 2113(d) requires proof that, while robbing a federally insured bank, the defendant put in jeopar dy the life of another "by the use of a dangerous weapon or device." The Court of Appeals for the Third Circuit has not yet addressed the application of this statute in a case where the defendant stated he had a weapon, appear ed to have his hand on a weapon, and threatened to use that weapon,

5

but never actually displayed a weapon during a r obbery. The government argues that words and gestures that lead a victim to believe a robber is armed constitute the "use of a dangerous weapon or device" within the meaning of the statute regardless of whether the defendant actually possesses a weapon. In other words, the danger ous device being employed in the robbery was Wolfe's threat to shoot. Were we to adopt this interpretation of the statute the prosecution would be relieved of the bur den to prove that the defendant actually had a weapon and would only have to prove that the defendant said he had a weapon. Wolfe not only argues that threatening wor ds and gestures are not a dangerous device, but also that, absent some corroborating evidence, threats and gestur es alone are insufficient evidence to establish beyond a r easonable doubt that a robber actually possessed a danger ous weapon. We decline to adopt either interpr etation and instead conclude that, while threats themselves are not a "dangerous device" within the meaning of the statute, these same threats may be considered by the jury as evidence that a defendant actually had a dangerous device or weapon. It is a subtle, but important, distinction.

Threatening words and gestures do not, in and of themselves, constitute a dangerous device within the meaning of 18 U.S.C. S 2113(d). The crime of bank robbery occurs when a person obtains or attempts to obtain money or valuables from a federally insured bank"by force and violence, or by intimidation." 18 U.S.C. S 2113(a). The commission of bank robbery under S 2113(a) carries a penalty of not more than twenty years imprisonment and/or a fine of not more than $5,000. The much more serious offense of aggravated bank robbery occurs when a person, "in committing, or attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device." 18 U.S.C. S 2113(d). This offense carries a steeper maximum penalty of twenty-five years imprisonment and/or afine of not more than $10,000. Thus, on its face, the statute clearly differentiates between robberies committed employing force or intimidation and robberies committed with the aid of dangerous weapons or devices.

6

An interpretation of the statute that characterizes a threat as a "dangerous device," r egardless of whether the robber actually possesses a dangerous device such as a gun or knife, would render S 2113(a) lar gely superfluous thereby contravening established principles of statutory interpretation. Under such an interpretation a robber who walked into a bank, demanded money and threatened to shoot, but who was apprehended on the spot and found to be unarmed would be guilty of aggravated bank robbery under S 2113(d) because when he made the thr eat he used a dangerous device. The United States Solicitor General and our sister Circuits have rejected this interpretation as inconsistent with the plain language and legislative intent behind SS 2113(a) and (d). See, e.g., McLaughlin v. United States, 476 U.S. 16, 106 S.Ct. 1677, 90 L.Ed.2d 15 (1986); United States v. Ray, 21 F.3d 1134, 1137–38 (D.C. Cir. 1994); United States v. Perry, 991 F .2d 304, 309 (6th Cir. 1993). A robber who uses threats of violence to accomplish a robbery, but who is unarmed, is guilty of the lesser offense of bank robbery under S 2113(a). For this Court to conclude that these threats of violence ar e, in and of themselves, a dangerous device would cir cumvent legislation designed to recognize and deter the increased danger presented by criminals who commit crimes while carrying weapons or devices that appear to be weapons. See Perry, 991 F.2d at 310. We cannot interpret the statute in a manner inconsistent with this explicit distinction by construing threatening words as a "dangerous device" under S 2113(d). We conclude that in or der to sustain a conviction under S 2113(d) the prosecution bears the burden of proving that the robber had a dangerous weapon or device and that he used it.

While Wolfe's threats to shoot ar e not, in and of themselves, a dangerous device, these same thr eats may be considered by a jury as relevant evidence on the issue of whether Wolfe actually possessed a weapon when he robbed the bank. We are in agreement with other Courts of Appeal that have wrestled with this issue that, when a robber says he has a gun and that he will use it, a jury may r easonably infer that he did have a gun.2Ray, 21 F.3d at 1140; United

_____

2. The dissent maintains that this holding ef fectively relieves the prosecution of its burden to prove actual possession of a weapon and

7

States v. Levi, 45 F.3d 453, 457 (D.C. Cir. 1995); United States v. Ferguson, 211 F.3d 878, 884 (5th Cir. 2000). During the robbery, Wolfe told the teller no less than three times that he had a gun and that he would use it. Levi, 45 F.3d at 457 (a defendant "may be convicted of aggravated bank robbery . . . in which he either stated that he had a gun or threatened to blow off the teller's head. Both statements are sufficient evidence for the jury reasonably to conclude that the robber indeed had a gun"). The act of gesturing with his arm in his jacket pocket is additional evidence the jury is entitled to evaluate in considering the truth of his claim that he was armed.3 In Wolfe's case it

_____

instead requires only that it prove the defendant said he had a weapon. [Dissent at 12]. This generalization overlooks the rule clearly set forth in

this opinion -- the prosecution must pr ove actual possession of a dangerous weapon in order to sustain a conviction under S 2113(d). Our holding simply leaves to the trier of fact the decision of whether to credit

a defendant's own statements, made during the course of a robbery, that he was armed. However, it does not, as the dissent implies, require a jury to find that a defendant was armed based on such statements.

3. At the trial, an eyewitness to the robbery testified as follows regarding Wolfe's threatening "gestures":

> Q: Could you . . . tell us what happened to you on that day?
>
> A: . . . . I was -- just had finished taking care of a customer. Hum,
> and another customer approached my window. When I looked up the gentleman pushed a bag in front of me. He had his hand in his jacket and he told me that he had a gun and he wanted the bag filled with money.

(App. 110, lines 8-15).

> Q: Maureen, you said he had his hand in his jacket when he approached your window. By his actions did he indicate to you that he had a weapon?
>
> A: Yes. He said he had a gun and he would shoot.

(App. 112, lines 17-20).

> Q: And the robber did not have gloves on so far as you could tell?
>
> A: Not that I know of. I honestly don't know what was on his hand. I only -- I was watching the -- the -- mor e the arm in his coat and just watching what he was saying to me . . .

(App. 115, lines 2-8).

would have been uniquely reasonable for a jury to take Wolfe at his word and so conclude because he never once disputed the prosecution's contention on this point either by direct denials, on cross-examination of the eye witnesses, by the presentation of contrary evidence, or in his opening or closing statements. Instead, the defense chose to focus on the issue of the robber's identity and did not so much as assert that Wolfe was unarmed when he robbed the bank. Indeed, it was never an issue in this case. Accordingly, viewing the evidence in the light most favorable to the prosecution, as we must, we hold that there was sufficient evidence for a reasonable jury to conclude Wolfe actually possessed a gun during the robbery of the Penn Security Bank and Trust Company. Because there was sufficient evidence to sustain the jury's conclusion that he actually possessed a gun, his threats to shoot unless the teller gave him money clearly constitute the "use" of a dangerous weapon within the meaning of the statute.

Because the jury instructions made it irrelevant whether Wolfe actually had a dangerous weapon we must also consider the implications of the jury charge. As the above discussion indicates, a conviction under S 2113(d) requires proof that a defendant actually had a weapon. By instructing the jury that they could convict based solely on the teller's reasonable belief that Wolfe was armed, the District Court deviated from the correct legal rule when charging the jury and committed clear error. Levi, 45 F.3d at 456; Ray, 21 F.3d 1140. We conclude, however, that this error did not affect substantial rights by altering the outcome of the proceedings; therefore, it was not plain error.

Under plain error review, Wolfe bears the burden of establishing that the error affected his rights by prejudicing the jury's verdict. Turcks, 41 F.3d at 898. Wolfe cannot meet that burden. The Supreme Court itself has cautioned that "[i]t is a rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). Not only did Wolfe fail to object to the

9

erroneous instructions, he did not even obliquely raise the issue of whether he had a weapon during the trial. The evidence presented at Wolfe's trial per mitted only one conclusion: he was armed. We cannot, therefore, conclude that the erroneous jury instruction prejudiced the jury's verdict. In light of the evidence presented at trial, we are confident that the jury would have convicted W olfe even if the appropriate instruction had been given.

III.

Because there was sufficient evidence to sustain Wolfe's conviction for aggravated bank robbery and because the erroneous jury instructions do not warrant a r eversal under the plain error standard, we will affir m Wolfe's conviction under 18 U.S.C. S 2113(d). For the for egoing reason, the District Court's judgment of June 19, 2000 will be affirmed.

10

ROBERT J. WARD, Senior District Judge, concurring in part and dissenting in part:

I respectfully concur in part and dissent in part. Where a defendant threatens to use a dangerous weapon or device, but does not display an object reasonably perceived to be one, I concur that actual possession is r equired to sustain a conviction under 18 U.S.C. S 2113(d). However, I disagree with the majority that Wolfe's threats to use a gun, and these threats alone, are sufficient to establish actual possession beyond a reasonable doubt.

Although I agree with the majority that W olfe's threats "may be considered by a jury as relevant evidence on the issue of whether Wolfe actually possessed a weapon," [Majority Opinion at 7], I do not believe that such threats are enough to uphold the verdict in this case. The only "relevant evidence" presented at trial that Wolfe was armed was that he verbally threatened to use a gun and that his hand was in his jacket or coat.1 As noted in the Solicitor General's brief in McLaughlin v. United States , 476 U.S. 16 (1986), "[r]obbers frequently pass notes to tellers demanding money and suggesting that they are ar med, although they may be unarmed." Brief for the United States at 18, McLaughlin, 476 U.S. 16 (1986) (No. 85-5189), reprinted in Appendix at 179, 188. In the present case, where the only evidence of actual possession is Wolfe's threats, there is a strong possibility that he may have been deceiving the teller in an effort to intimidate her. The jury should not be permitted to infer actual possession beyond a reasonable doubt from these threats alone since this "approves precisely the kind of speculating which jurors should not do and courts should not permit much less encourage them to do." United States v. Ray , 21 F.3d 1134, 1145 (D.C. Cir. 1994) (Will, J., concurring in part and dissenting in part).

_____

1. Despite the majority's statement that "[t]he act of gesturing with his arm in his jacket pocket is additional evidence" of whether Wolfe was armed, [Majority Opinion at 8], the trial record indicates only that Wolfe's
hand was in his jacket or coat; there was no mention that he "gestured" or that his hand was in his "pocket" (as opposed to any other part of his jacket or coat). See Appendix at 110, 112, 115.

11

Furthermore, the majority expresses concern that if it were to adopt the government's interpr etation of the statute, under which words and gestures would constitute the use of a dangerous weapon or device, "the prosecution would be relieved of the burden to pr ove that the defendant actually had a weapon and would only have to pr ove that the defendant said he had a weapon." [Majority Opinion at 6] (emphasis added). Yet, by then holding that the jury can infer possession from mere threats, the majority effectively achieves the same outcome: the prosecution is permitted to establish that the defendant actually had a weapon only by proving that he said he had a weapon.

In addition, the majority's conclusion produces another result that it seeks to avoid: "circumvent[ing]" the legislation and rendering 18 U.S.C. S 2113(a) "largely superfluous." [Majority Opinion at 7]. By definition, every violation of S 2113(a) involves the use of"force and violence, or . . . intimidation." 18 U.S.C. S 2113(a). An unarmed robber's threat to use a weapon establishes this intimidation element. Therefore, the majority's holding that the same threat alone is sufficient for a jury to infer possession blurs, if not eliminates, the distinction between S 2113(a) and S 2113(d). Indeed, under the majority's holding, S 2113(a) will now be reserved only for those rare occasions when a robber walks into a bank demanding money, but neither states that he has a weapon nor displays what can be perceived as a danger ous weapon or device.

The hypothetical jury charge crafted by the dissenting judge in Ray to demonstrate the confusion r esulting from the Ray majority's holding aptly illustrates the anomalous result produced by the majority in the pr esent case:

> The law is clear that you may not convict the defendant under S 2113(d) merely because he said he had a gun or other dangerous device and gestur ed or acted like he did but never displayed or exhibited any object which looked like or could reasonably have been believed to be a gun or other dangerous object. However, if you are satisfied fr om his words, actions or gestures that he did have a hidden gun or other

12

> dangerous object even though he did not display it, then you may convict him under S 2113(d).

Ray, 21 F.3d at 1144 (Will, J., concurring in part and dissenting in part).

The District of Columbia Circuit is the only circuit squarely to decide that a jury can infer actual possession solely from a defendant's threats. See, e.g., Ray, 21 F.3d at 1141. Although other circuit courts have quoted language from Ray with approval, in each of those cases threats were not the only evidence of gun possession. See United States v. Ferguson, 211 F.3d 878, 884 (5th Cir. 2000) (additional evidence that defendant had used a gun in several similar robberies and that a gun was found in his apartment); United States v. Jones, 84 F.3d 1206, 1209, 1211 (9th Cir. 1996) (additional evidence that defendant abandoned a revolver, holster, and ammunition in a getaway vehicle). Since the Ferguson decision cited in the majority opinion did not rule on the narrow issue presented here and in Ray, Ferguson is inapplicable.

Because I believe that there is insufficient evidence to sustain a conviction under S 2113(d), I am also of the opinion that the clearly erroneous jury char ge constituted plain error in that it affected the defendant's substantial rights by misleading the jury on the issue of the defendant's "use of a dangerous weapon." Accordingly, I would vacate the judgment and remand for r esentencing under S 2113(a).

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

13