

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-24-2007

# USA v. LeBlanc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3873

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. LeBlanc" (2007). *2007 Decisions.* Paper 388.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/388

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-3873
_____

UNITED STATES OF AMERICA


vs.

THEODORE LeBLANC,
                                        Appellant.
_____

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(No. 2:05-CR-00416)
District Judge: Honorable William Yohn
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 20, 2007


Before: SLOVITER, SMITH, and GARTH, Circuit Judges.

(Opinion Filed: September 24, 2007)
_____

OPINION
_____

Garth, <u>Circuit</u> <u>Judge</u>:

Theodore LeBlanc ("LeBlanc") appeals his conviction on the ground that the United States of America (the "Government") deprived him of his due process right to a fair trial. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3231. For the following reasons, we will affirm.

I.

Because we write only for the parties' benefit, we only recite those facts essential to decide this appeal. On July 26, 2005, LeBlanc was indicted on one count of conspiracy to commit honest services mail fraud, 18 U.S.C. § 371, five counts of honest services mail fraud, 18 U.S.C. §§ 1341, 1346, soliciting a bribe in relation to a program receiving federal funds, 18 U.S.C. § 666, bank fraud, § 18 U.S.C. § 1344, and two counts of filing false income taxes, 26 U.S.C. § 7206(1). On April 18, 2006, a jury convicted LeBlanc on all counts except one – he was acquitted of one count of filing a false income tax return.

The charges all stem from actions taken while LeBlanc held the office of Mayor of the Borough of Norristown, Pennsylvania (the "Borough"). The indictment alleged, *inter alia*, that LeBlanc took a $10,000 cash bribe in February 2003 from the Borough's insurance broker, Herbert Bagley ("Bagley"), in exchange for awarding a lucrative Borough insurance contract to Bagley. The crux of LeBlanc's defense at trial was that the $10,000 payment was not a bribe, but rather a personal loan from Bagley to assist LeBlanc in opening a bar.

In support of this defense, LeBlanc entered into evidence a "judgment note"

-1-

purportedly executed by him in favor of Bagley in February 11, 2003. LeBlanc produced this note to the Government in January 2006, nearly three months before trial. The note was on a pre-printed legal form with the blanks filled in as to the amount ($10,000) of the note and the payee (Bagley).

The Government argued at trial that the judgment note was merely a "sham," and was created by LeBlanc after he became aware of the investigation involving him. To support this assertion, the Government offered testimony that an April 29, 2004 search by federal and state agents of LeBlanc's home and bar, along with Bagley's home and office, uncovered no document regarding a $10,000 loan to LeBlanc. The Government also introduced evidence that, at the time of the loan, Bagley was in danger of losing his insurance contract with the Borough, and that Borough council members were pushing LeBlanc and his administration to find a replacement for Bagley. Additionally, the Government introduced evidence that LeBlanc did not produce the judgment note in response to a subpoena served on April 29, 2004, nor did he or Bagley mention the note to his interrogators on that day. Most importantly, LeBlanc admitted to a federal agent at the time of the search that there was "no loan agreement" for the $10,000 payment from Bagley. (Supp. App. 276.)

The Government also called Arthur King ("King") as a witness. King was a real estate attorney who operated a land management company with Bagley. Both sides concede that the judgment note originated with King, but they differ as to when its blanks were filled-in. King testified as follows. At Bagley's request, King sent the form

judgment note by fax to Bagley in January 2003. At the time, Bagley requested the judgment note because he was lending money to an unidentified friend. On approximately July 6, 2004, after the execution of the searches, Bagley came to King's office and attempted to remind King of the note he had previously sent Bagley. When King initially did not remember the note, Bagley showed King the fax while sitting across from his desk. Bagley only showed King the top of the document, but King saw enough to recognize that his fax number was on top. Bagley then told King that he had loaned money to LeBlanc, but did not show King any other part of the document he held or any completed loan agreement between LeBlanc and Bagley. The judgment note listed King's office as the location where LeBlanc was to repay the loan. King testified, however, that he would not have known what to do if LeBlanc had appeared with the payments. The first time King saw the completed note was when the Government showed it to him during trial preparation.

In his defense, LeBlanc testified at trial that the money from Bagley was a loan, and that Bagley presented LeBlanc with a promissory note which he signed in February 2003. The Government emphasized in its questions that no copy of the note was ever found in its search of LeBlanc and Bagley's properties, that LeBlanc did not produce the note in response to the subpoena, and that LeBlanc failed to mention the note to the officers that searched his home.

In their closing argument, the Government reiterated its contention that the note was a sham. For instance, the prosecutor for the Government told the jury that the note

was "simply a sham made up to show you in case the defendant or Bagley were caught," and that no agent found the note "in any place where it should be." (App. at 54.) In addition, the prosecutor argued that "if this document had existed in April 2004, it would have been found in the searches, or it would have been produced pursuant to those subpoenas." The prosecutor concluded this argument by saying:

> And Arthur King told you he couldn't see any handwriting on the document. And you better believe that if it had been filled out in July of 2004, when Bagley did that, you better believe that Arthur King would have seen that entire document, and he didn't because it wasn't filled out at the time, in July of 2004.

(App. at 55.) The prosecutor reiterated this line of argument on rebuttal, arguing to the jury that the promissory note was not found on April 29, 2004 – the day of the searches – because it was merely a "blank form" on that date, and "because it wasn't filled out yet" and "wasn't written yet." (App. at 56-57.)

On appeal, LeBlanc contends that the Government's arguments amounted to prosecutorial misconduct that deprived him of a fair trial. He argues that the Government, in fact, knew that the judgment note existed *prior* to the searches, and therefore the Government acted improperly by arguing otherwise to the jury. In support of this argument, LeBlanc relies on a pre-trial memorandum submitted by the Government which makes reference to a recorded conversation from December 8, 2003, between Bagley and a third-party informant, Joseph Corropolese. In the memorandum, the Government stated in a footnote:

> In another conversation on December 8, 2003, Bagley again

> discussed payments to LeBlanc.  Bagley mentioned that he had a signed piece of paper (*we surmise he meant loan document*), but the [sic] he could "wipe my butt with it when he (LeBlanc) says no."

(App. at 63.) (emphasis added).  LeBlanc argues that the italicized portion of this footnote referring to the Government's "surmise" that Bagley was discussing a loan document is tantamount to an acknowledgment by the Government that the judgment note existed prior to the searches.  Because of this, LeBlanc argues that the Government actually *knew* the judgment note existed before the search, and their subsequent attempt to characterize it as fabricated was not true and constituted prosecutorial misconduct depriving him of his due process right to a fair trial.

## II.

Because LeBlanc's counsel concedes that he did not raise an objection at trial on the grounds of prosecutorial misconduct, we review his claim on appeal for plain error.  *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003) (citations omitted).  Plain error occurs only when the error is clear and obvious and affects substantial rights.  *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001).  Substantial rights are affected if the error was sufficiently prejudicial to affect the outcome of the trial.  *Id*.  A favorable exercise of discretion to correct plain error is warranted if the defendant is actually innocent or the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id*. (quotations omitted).  A defendant has the burden of establishing plain error.  *Id*.  "In order to demonstrate prosecutorial misconduct under a

plain error standard, the review must reveal egregious error or a manifest miscarriage of justice." *Brennan*, 326 F.3d at 182. (internal quotation marks and citations omitted).

The Government's conduct in this case comes nowhere close to the showing necessary to sustain a claim of prosecutorial misconduct under the plain error standard of review. The evidence introduced by the Government clearly supported the inference that LeBlanc fabricated the note after the searches occurred. First, the Government introduced the testimony of three agents who searched LeBlanc's home and bar, and Bagley's home and office, and found no document regarding a $10,000 loan from Bagley to LeBlanc. The agents also testified that, in undertaking their searches, they were specifically looking for such a document. Second, LeBlanc did not produce the $10,000 judgment note after the Government served two subpoenas, on the date of the search, addressed to his corporations and calling for the production of all evidence of payments to public officials. Third, an Internal Revenue Service Agent who interviewed LeBlanc at the time of the search testified at trial that "LeBlanc mentioned he received a loan in the amount of $10,000 from Bagley, but there was no loan agreement between LeBlanc and Bagley." (Supp. App. at 275.)

Furthermore, King's testimony that Bagley did not show him a completed note on June 6, 2004, when Bagley visited King's office, supports the inference that the note was not completed on that day. Moreover, the Government introduced evidence that LeBlanc only produced the note in January 2006, a mere three months before trial. Based on this evidence, the Government was well within its rights to argue that the evidence supported

-6-

the logical inference that LeBlanc fabricated the judgment note only after he became aware of the Government's investigation on April 29, 2004. *United States v. Sullivan*, 803 F.2d 87, 91 (3d Cir. 1986) ("[T]he prosecution may ask the jury to draw permissible inferences from anything that appears in the record.") (internal quotation marks and citation omitted).

Additionally, we do not view the Government's statement in its pre-trial memorandum regarding the taped conversation as evidence of prosecutorial misconduct. As stated in the memorandum, the Government only "surmised" that Bagley was referring to a loan document; it never actually acknowledged that such a document, in fact, existed. Moreover, as described above, the evidence clearly supported the Government's argument that LeBlanc fabricated the note after the search. We conclude therefore that there was no misconduct on the part of the Government and therefore there was no error (less egregious error) nor prejudice to LeBlanc and, as a consequence, no miscarriage of justice. *See United States v. Olano*, 507 U.S. 725, 737 (1993).

III.

We will affirm LeBlanc's conviction.