

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-28-2008

# USA v. Adeyemi

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1096

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Adeyemi" (2008). *2008 Decisions.* Paper 1129.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1129

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-1096

UNITED STATES OF AMERICA

v.

SAMSON ADEYEMI,
                              Appellant

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 06-cr-00124-1)
District Judge:  The Honorable Legrome D. Davis

Argued:  May 8, 2008

Before: BARRY, STAPLETON, <u>Circuit Judges</u>, and RESTANI,[*] <u>Judge</u>

(Opinion Filed:    May 28, 2008)

Mark S. Greenberg, Esq. (Argued)
LaCheen, Dixon, Wittles & Greenberg
1429 Walnut Street, 13th Floor
Philadelphia, PA 19102-0000

<u>Counsel for Appellant</u>

---

[*]  Honorable Jane A. Restani, Chief Judge, United States Court of International Trade, sitting by designation.

Arlene D. Fish, Esq. (Argued)
Robert A. Zauzmer, Esq.
Office of United States Attorney
Suite 1250
615 Chestnut Street
Philadelphia, PA 19106-0000

Counsel for Appellee

_____

OPINION

_____

BARRY, Circuit Judge

Appellant Samson Adeyemi was convicted of one count of conspiracy to interfere with interstate commerce by robbery, two counts of interference with interstate commerce by robbery, and two counts of using and carrying a firearm during a crime of violence. On appeal, he challenges the District Court's denial of his motion to suppress his statement to law enforcement and the Court's jury instruction concerning the definition of "firearm." For the following reasons, we will affirm.

**I.**

The facts of the robberies which occurred on January 3, 2006 are not in dispute and, given that we write solely for the parties, those facts need not be revisited here except as necessary for our review of the denial of Adeyemi's motion to suppress. Suffice it to say that on January 9, 2006, Adeyemi had just been implicated by Brian Wynder, one of the participants in the two robberies at issue here, when, quite

2

coincidentally, he and his father arrived at the police station at about 11:20 p.m. to pick up the father's car, which had been identified as having been used in one of the robberies and seized three days earlier. Detectives James Crone and Frank Mullen had been questioning Wynder and another participant, Ryan Hobdy, and Detective Crone recognized Adeyemi from a photograph. Adeyemi was taken to a room and told by Detective Crone that he and Detective Mullen wanted to speak with him about the car and the two robberies, but that they had to leave the station and would interview him when they returned. Although the door was locked while the detectives were away, Adeyemi was not handcuffed.

When the detectives returned, at about 4:00 a.m., after taking Wynder and Hobdy back to prison, they explained to Adeyemi that he was being held because he had been implicated in the two robberies. They orally advised him of his *Miranda* rights, which Adeyemi stated he understood and orally waived. The detectives then asked Adeyemi a series of questions about the McDonald's robbery. In response, Adeyemi gave a version of the events that night in which he said that he was there in his car but that he did not take part in any criminal activity. The detectives stopped Adeyemi, gave him the statement that Wynder had given implicating him in the robbery, and showed him the surveillance video of his vehicle in the McDonald's drive-thru. At that point, Adeyemi admitted his involvement in the two robberies and explained what had in fact occurred. Adeyemi was again given his *Miranda* rights and signed a written waiver of those rights.

3

Detective Crone then took a formal statement from him, and typed it out on a computer, noting that it was given at 4:30 a.m., about 30 minutes after questioning had begun. Detective Crone printed out the statement for Adeyemi to review in print. Adeyemi declined to make any changes and signed it.

As to the second issue raised by Adeyemi on appeal, at trial he proposed the following jury instruction on the definition of "firearm":

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. . . .
>
> The government is not required to prove that the weapon is operable or actually capable of firing for it to be a "firearm." Rather, the government need establish only that the weapon "is designed to" or can be "readily converted" to expel a projectile by the action of an explosive.
>
> The nature and extent of a weapon's inoperability may be relevant in determining whether it will or is designed to or may readily be converted to expel a projectile by the action of an explosive. If the weapon, in its current condition, is not designed to or cannot readily be converted to expel a projectile by the action of an explosive, it is not a "firearm."
>
> Simply because a weapon was a "firearm" when originally manufactured does not necessarily mean that it is a "firearm" in its present condition.

(J.A. 627.)

4

The District Court charged the jury as follows:

[A] firearm is defined as any weapon which will or is designed to or, may readily be converted to expel a projectile by the action of an explosive. Any weapon which will or is designed to or, may readily be converted to expel a projectile by the action of an explosive.

So this charge requires that a real gun be used and carried and the term includes a handgun, revolver, a rifle or a shotgun, as well as the frame or the receiver of such a weapon, and the Government, under the law, is not required to prove that the firearm was operable or actually capable of discharging a bullet at the moment that it was utilized. Rather, the Government is required at a minimum to establish that the gun was designed to fire projectiles or that it could readily be converted to fire.

(J.A. 605-06.)

## II.

We have jurisdiction over this appeal under 28 U.S.C. § 1291. "We review the district court's denial of [a] motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in light of the court's properly found facts." *United States v. Lafferty*, 503 F.3d 293, 298 (3d Cir. 2007) (internal quotation marks and citation omitted; brackets in original). We exercise plenary review over whether the jury instruction stated the proper legal standard(s). Where a defendant timely objects to the wording of a particular instruction, we review the wording used for abuse of discretion. In so doing, we look at the totality of the instructions and not any particular wording or phrasing in isolation. *United States v. Jimenez*, 513 F.3d 62, 74-75 (3d Cir. 2008). Where a defendant fails to object timely to the use of a jury instruction, however, we review for plain error. *United States v. Williams*, 464 F.3d 443, 445 (3d Cir. 2006). A

5

"plain error" is an error that affects substantial rights. *United States v. Wolfe*, 245 F.3d 257, 260-62 (3d Cir. 2001) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

## III.

Adeyemi argues that his statement was involuntary under *Missouri v. Seibert*, 542 U.S. 600 (2004), because it was only after he gave that statement that he waived his *Miranda* rights in writing. The distinction he glosses over, however, is the fact that he was given (and waived) his *Miranda* rights orally at the outset of his questioning. In *Seibert*, the Court found that the defendant's admission was involuntary where it had been obtained after the interrogating officer deliberately questioned her at length without having given her any *Miranda* warnings. *Id.* at 616-17. Only after she made an inculpatory statement did the officers advise the defendant of her *Miranda* rights, obtain her written waiver, and then prod her to restate the admission on tape. *Id.* at 605. Here, Adeyemi was orally advised of his *Miranda* rights prior to any questioning. The fact that *Miranda* rights were later also given in writing does not negate the efficacy of the initial oral advice.

Adeyemi also argues that because he was young, was new to the criminal justice system, and was questioned in the middle of the night, his statement was effectively coerced. While, to be sure, Adeyemi was placed in custody in a room by himself for over four hours, he points to no evidence even suggesting that this four-hour wait somehow contributed to coercing his statement. Moreover, Crone explained that it would be

6

common for another detective or a supervisor to check on a person being held in a room and that, in fact, he had told the supervisor and the desk person to look after Adeyemi. He also testified that during Adeyemi's interview it was clear to him that Adeyemi understood his rights and calmly answered his questions. It is not enough to say, as Adeyemi says, that he was young and a neophyte to the criminal justice system. He was nineteen years old, a high school graduate, and a college student in the pre-med program at the time he was questioned. Viewing the totality of the circumstances surrounding his interrogation, the District Court did not err in denying the motion to suppress Adeyemi's statement after finding that he was twice given warnings, understood his rights, and knowingly and intelligently relinquished those rights. *See United States v. Sriyuth*, 98 F.3d 739, 749 (3d Cir. 1996).

Neither did the District Court abuse its discretion much less commit plain error with reference to the now-challenged jury instruction. "Firearm" is defined at 18 U.S.C. § 921(a)(3) to include, among others, "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive." The District Court's instruction tracked the elements of this definition quite closely. The instruction stated that a "firearm" is "any weapon which will or is designed to or, may readily be converted to expel a projectile by the action of an explosive." (J.A. 605.) The instruction then stated that "the Government, under the law, is not required to prove that the firearm was operable or actually capable of discharging a bullet at the

moment that it was utilized." (J.A. 605-06.)

At the charge conference, Adeyemi's counsel had asked whether the Court would include in its instructions the third paragraph of his proposed firearm instruction. The Court explained that it would not give that particular language but that the concept was implicit in what it was going to give. Counsel took no issue with that and instead went on to say that his problem with the government's proposed instruction was its use in the second paragraph of the verb "was" rather than "is." The Court asked counsel if what he wanted was "which will or is designed or may be converted to expel a projectile," and counsel said "Yes." The Court responded, "Well, that's what's in my charge." Counsel said "[e]xcellent." (J.A. 578.) No objection was taken to any part of the firearm instruction the Court concluded that it would give and no objection was taken to the instruction as given to the jury. There was no plain error.

## IV.

We will affirm the judgment of the District Court.