NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-3769
_____

UNITED STATES OF AMERICA

v.

FRANCISCO GERARD DEL TORO,
a/k/a Frank

Francisco Del Toro,
                                         Appellant

_____

Appeal from the United States District Court
for the District of New Jersey
(Criminal No. 09-cr-00508-001)
District Judge: Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
July 9, 2012

Before: FUENTES, HARDIMAN and ROTH, *Circuit Judges*

(Opinion Filed: July 23, 2012)
_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

Francisco Del Toro appeals his convictions of two counts of mail fraud and three

counts of wire fraud, in violation of 18 U.S.C. §§ 1341 and 1343.  Del Toro requests that

we vacate his judgment of conviction on these counts and remand for a new trial. For the reasons stated below, we will affirm.

## I.

Because we write primarily for the parties, we recite only those facts necessary to our decision.

On July 14, 2009, a federal grand jury returned a nine-count indictment charging Del Toro with two counts of mail fraud, five counts of wire fraud, one count of conspiracy to commit mail and wire fraud, and one count of conspiracy to commit money laundering. The following facts were revealed at trial.

From 2003 to 2005, Del Toro worked with two acquaintances, Steven Chen and Donald Weiner, to complete a series of fraudulent, double-escrow real estate closings. Del Toro orchestrated the scheme after he was hired by American Water Works Company ("American Water") to sell twelve of the company's unused properties "at or above their appraised value." App. 95. American Water instructed Del Toro to sell the properties as quickly as possible to meet internal financial targets. App. 60-61, 80-81. Del Toro met with Chen and Weiner—his co-conspirators—and explained that he was having trouble selling the properties. App. 100-01, 178-79. Ultimately, Del Toro convinced Chen and Weiner to help him "look good" to American Water by purchasing the listed properties at their appraised value and then using their local real estate connections to immediately re-sell the properties at a higher price. Appellant's Br. 19; App. 178-79. Del Toro explained that he and his co-conspirators could then share the resulting profits. Because both sales would close on the same day, Chen and Weiner

2

were not required to actually make deposits on the properties, as these could be paid directly from the proceeds of the second sale. App 102, 179. Moreover, if a second buyer could not be located, Del Toro assured Chen and Weiner that he would cancel the contract. App. 102, 179.

After agreeing to join in this scheme, Del Toro and his co-conspirators completed seven fraudulent closings. Each time, Del Toro misrepresented to American Water that the properties had been sold for the highest possible price—fair market value—and concealed his relationship with Chen and Weiner entirely. He used his personal email account, rather than the one provided by American Water, to communicate with Chen and Weiner; created false invoices; and developed fictitious business entities, also in cooperation with Chen and Weiner, to inject fraudulent costs into the settlement of each transaction. All told, the scheme netted hundreds of thousands of dollars for Del Toro and his co-conspirators.

At trial, Chen and Weiner testified to the details of this scheme and explained that Del Toro orchestrated both the sales and the re-sales. App. 199, 288-90. They admitted that neither of them had a real estate license or the financial means to purchase any real estate and that they had done nothing to improve the real estate they purchased prior to re-selling it at a higher price. App. 100-01, 178-79, 582-85. They also admitted that they shared the proceeds from the re-sales with Del Toro and accepted fees on behalf of their respective fictitious business entities. App. 249-51, 352-55.

Based on this and other evidence, the jury convicted Del Toro on all nine counts. The District Court sentenced Del Toro to 41 months' imprisonment, to be followed by a

3

five-year term of supervised release.  This timely appeal followed.[1]

## II.

This appeal is limited to Counts 2 through 6 of the indictment, the substantive mail and wire fraud charges, which were brought in connection with three of the aforementioned real estate transactions.  The sole issue for our review is whether there was sufficient evidence from which a jury could conclude that Del Toro acted with intent to defraud.

In determining whether sufficient evidence supports the jury's verdict, "[w]e review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."  *United States v. Wolfe,* 245 F.3d 257, 261 (3d Cir. 2001).  Where, as here, the defendant does not properly raise the issue before the District Court, we review for plain error.  *See United States v. Vazquez*, 271 F.3d 93, 99 (3d Cir. 2001).

> Under the plain error standard, "before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affect[s] substantial rights.  If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings."

*United States v. Williams*, 464 F.3d 443, 445 (3d Cir. 2006) (quoting *Vazquez*, 271 F.3d at 99).

In order to prove mail or wire fraud beyond a reasonable doubt, the government must present evidence of the following elements: "'(1) the defendant's knowing and

---

[1] The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291.

4

willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of the mails or interstate wire communications in furtherance of the scheme.'" *United States v. Al Hedaithy*, 392 F.3d 580, 590 (3d Cir. 2004) (quoting *United States v. Antico*, 275 F.3d 245, 261 (3d Cir. 2001)).

Turning to the element at issue, specific intent to defraud, Del Toro contends that the evidence produced at trial merely showed that he failed to disclose his "inherent conflict of interest" to American Water. Appellant's Br. 19. He concedes that this was unethical, but maintains that it does not rise to the level of criminal intent. *Id.* at 10. He further argues that the Government failed to prove that American Water suffered any detriment from the subsequent re-sales because it received what it bargained for—the appraised value of each property. *Id.* at 10-11. These arguments are unavailing.

Del Toro cites to cases involving honest services fraud to support his contention that an employee's undisclosed conflict of interest alone does not pose an economic detriment to his employer or constitute criminal mail and wire fraud. *See, e.g.*, *United States v. Skilling*, 130 S. Ct. 2896, 2926-34, 177 L. Ed. 2d 619 (2010) (holding that 18 U.S.C. § 1346 criminalizes only bribery and kickback schemes, not mere self-dealing). This argument fails for two reasons. First, Del Toro was not charged with honest services fraud. Consequently, the jury was not instructed regarding honest services fraud and did not render a verdict based on that theory. This line of authority is therefore irrelevant to Del Toro's claim. Second, Del Toro's failure to disclose his conflict of interest did cause detriment to American Water. Although Del Toro is correct in his assertion that American Water stated that it would accept the appraised price of its

5

properties, he fails to mention that, based on his own misrepresentations, American Water believed that Del Toro sold its properties at the highest possible price. Moreover, the evidence demonstrated that American Water suffered real financial harm, in excess of $150,000, as a result of Del Toro's scheme. Thus, it is clear that American Water did not receive what it bargained for in hiring Del Toro to sell its properties "at or above their appraised value." Accordingly, Del Toro's arguments lack merit.

After carefully considering the trial record, we conclude that the evidence amply supports the jury's finding of Del Toro's intent to defraud. The jury was presented with Chen's and Weiner's testimony describing the details of the scheme, the fraudulent documents produced by Del Toro and his co-conspirators in furtherance of the scheme, and the documents demonstrating the profits the scheme generated for Del Toro and his co-conspirators. Collectively, this evidence showed that the success of Del Toro's entire scheme rested upon secretly re-selling the properties at a higher price and then pocketing the proceeds. Indeed, when a higher offer was not received, Del Toro canceled the initial contract, demonstrating that the initial sales to Chen and Weiner were fraudulent. Accordingly, viewing this evidence in the light most favorable to the Government, it is clear that a rational juror could conclude that Del Toro had the requisite intent to defraud. *See United States v. Riley*, 621 F.3d 312, 333 (3d Cir. 2010) (recognizing that because there is rarely direct evidence of an intent to defraud, "[j]uries may infer intent from circumstantial evidence").

### III.

For the foregoing reasons, we will affirm Del Toro's conviction.