**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-2311
_____

UNITED STATES OF AMERICA

v.

JORGE ROMERO-AMARO,
Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(D.C. No. 3:20-cr-00049-001)
District Judge: Honorable Robert A. Molloy
_____

Argued May 1, 2025

Before: RESTREPO, FREEMAN, and McKEE, *Circuit Judges*

(Filed: August 1, 2025)


Francisco J. Adams Quesada        [ARGUED]
31 Eugene Street
Guaynabo, PR 00966
        *Counsel for Appellant*


Adam Sleeper                      [ARGUED]
Office of United States Attorney
5500 Veterans Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802
        *Counsel for Appellee*

_____

OPINION[*]

_____

McKEE, *Circuit Judge*.

Jorge Romero-Amaro appeals his conviction for failure to heave to a vessel in violation of 18 U.S.C. § 2237(a)(1).[1] Because we agree that the evidence was insufficient to support a guilty verdict, we will vacate Romero-Amaro's conviction and remand for entry of a judgment of acquittal.[2]

**I.**

Romero-Amaro moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 at the close of the government's case-in-chief, and renewed his motion at the close of all evidence. On both occasions, the District Court took the motion "under advisement."[3] Thereafter, the jury convicted Romero-Amaro of failure to heave to a vessel. Four months later, the District Court sentenced him to twelve months' incarceration and no supervised release.

---

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not constitute binding precedent.

[1] "[T]he term 'heave to' means to cause a vessel to slow, come to a stop, or adjust its course or speed to account for the weather conditions and sea state to facilitate a law enforcement boarding." 18 U.S.C. § 2237(e)(2).

[2] We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

[3] JA 739, 812.

## II.

"On appeal from the grant or denial of a motion for judgment of acquittal, this Court exercises plenary review and independently applies the same standard as the district court."[4] In ruling on a motion for judgment of acquittal, pursuant to Federal Rule of Criminal Procedure 29, "a district court must 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence.'"[5] Because Romero-Amaro moved for judgment of acquittal at the close of the government's case-in-chief and the District Court reserved decision, we must confine our review to the evidence presented by the government when the motion was made.[6]

---

[4] *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005). The government contends that we should apply plain error review because defense counsel "forfeited" this claim by mistakenly informing the District Court at sentencing that it had ruled upon the Rule 29 motion when in fact it had taken the motion under advisement. Answering Br. 12. While the District Court never explicitly denied the motion, it implicitly did so by scheduling a sentencing hearing. "A defendant must move for a judgment of acquittal at the conclusion of the evidence to properly preserve for appeal issues regarding the sufficiency of the evidence," which is exactly what Romero-Amaro did. *United States v. Wolfe*, 245 F.3d 257, 261 (3d Cir. 2001). Thus, Romero-Amaro did not forfeit this claim.

[5] *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (quoting *Wolfe*, 245 F.3d at 262).

[6] Fed. R. Crim. P. 29(b) ("If the court reserves decision, it must decide the motion on the basis of the evidence at the time the ruling was reserved."); *see also United States v. Richardson*, 658 F.3d 333, 337 (3d Cir. 2011); *United States v. Tyson*, 653 F.3d 192, 199 (3d Cir. 2011); *United States v. Boria*, 592 F.3d 476, 480 n.7 (3d Cir. 2010); *Brodie*, 403 F.3d at 133. We cannot ignore Rule 29 and our precedent despite both parties' mistaken belief that we may review all evidence presented at trial, including evidence introduced after the government's case-in-chief. *See Haybarger v. Lawrence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 413 n.3 (3d Cir. 2012) ("[W]e 'retain[ ] the independent power to identify and apply the proper construction of governing law.'" (quoting *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991)); *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911,

A conviction for failure to heave to requires proof beyond a reasonable doubt that "the master, operator, or person in charge of a vessel of the United States, or a vessel subject to the jurisdiction of the United States, . . . knowingly fail[ed] to obey an order by an authorized Federal law enforcement officer to heave to that vessel."[7] Romero-Amaro contends there was insufficient evidence for a rational juror to conclude that he was "the master, operator, or person in charge" of the boat at the time it was stopped. We agree.

During its case-in-chief, the government only introduced evidence that Romero-Amaro owned the boat in question and that he was one of five individuals present when Customs and Border Patrol agents intercepted it. None of the witnesses identified the driver of the boat.[8] "[T]he [g]overnment does not contend that an owner is necessarily the operator, master, or person in charge."[9] Rather, it argues that "ownership is relevant

---

[7] 18 U.S.C. § 2237(a)(1).

[8] A single witness provided a description of the driver as a "tall slender man." SA 152. But there was no evidence presented from which the jury could draw the conclusion that Romero-Amaro was the "tall slender man."

[9] Answering Br. 15. We agree. In the shipping context, Congress has defined "master" as "the individual having command of a vessel" and "owner" as "the person to whom the vessel belongs." 46 U.S.C. § 10101(1)–(2). Moreover, Congress has distinguished between the terms "master," "operator," "person in charge," and "owner," in several statutes. *See* 46 U.S.C. § 2111(d) (stating that in providing overtime payment to civilian officers and employees of the Coast Guard, "[t]he owner, charterer, managing operator, agent, master, or individual in charge of the vessel shall pay the amount of the overtime pay"); 46 U.S.C § 70502(b) (providing that a "vessel of the United States" is "a vessel owned . . . by an individual who is a citizen of the United States . . . unless . . . a claim of nationality or registry for the vessel is made by the master or individual in charge at the time of the enforcement action"). Based on the "well known canon of statutory construction that courts should construe statutory language to avoid interpretations that would render any phrase superfluous," we should not conflate these terms. *United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005), *as amended* (Feb. 15, 2005).

923 (11th Cir. 2018) ("[P]arties cannot waive the application of the correct law or stipulate to an incorrect legal test.").

because . . . it is one of several evidentiary bases that, when considered together, permit a commonsense inference that the defendant was the person in charge of the vessel."[10] However, the only evidence other than ownership is that Romero-Amaro was on the boat along with four other people—two at the helm and three sitting in the back—when it failed to stop.[11] The government's witnesses could not even determine whether Romero-Amaro was one of the two people at the helm. This meagre evidence is insufficient for a rational juror to convict Romero-Amaro of failure to heave to.

## III.

For the above reasons, we will vacate the District Court's judgment and remand for entry of a judgment of acquittal.

---

[10] Answering Br. 15.

[11] After the government rested, defense counsel presented evidence that four of the five people on the boat were friends who live on Culebra. And that everyone living on Culebra "ha[s] knowledge of ships" and "ha[s] a captain's license." JA 760–61. Specifically, both Romero-Amaro and one of his co-defendants had captain's licenses. Even if we could consider this additional evidence, we would still find it insufficient to convince a rational juror of Romero-Amaro's guilt beyond a reasonable doubt.